1997 ND 163

**William McCOLLUM, Claimant and Appellee,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant.**

**Civil No. 970058.**

Supreme Court of North Dakota.

Aug. 11, 1997.

Rehearing Denied Sept. 8, 1997.

Dean J. Haas, Dietz, Little & Haas, Bismarck, for claimant and appellee.

Lawrence A. Dopson (argued), and Brent J. Edison (on brief), Special Assistant Attorneys General, Bismarck, for appellant.

SANDSTROM, Justice.

[¶ 1] The Workers Compensation Bureau appealed a January 6, 1997, district court judgment reversing a June 3, 1996, Bureau order awarding permanent partial impairment benefits to William McCollum and directing the Bureau to pay greater benefits. We affirm in part, reverse in part, and remand for further proceedings consistent with our decision in *McCabe v. North Dakota Workers Comp. Bureau*, 1997 ND 145, 567 N.W.2d 201.

## I

[¶ 2] In 1986, McCollum received a work-related injury to his neck and back, and had partial hemilaminectomies[1] at C6–C7 and L5–S1. On May 4, 1995, Dr. Michael Martire performed a permanent partial impairment evaluation of McCollum, using the Fourth Edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment [*AMA Guides*]. Martire reported:

"For the patient's chronic lumbar pain without any evidence of radiculopathy or loss of motion segment integrity, the patient fits into Lumbosacral Category II and receives 5% impairment of the whole person."

In a February 23, 1996, letter to McCollum's attorney, Martire referred to a June 18, 1986, clinical history report in which Dr. Mattheis reported "a slight triceps muscle weakness on the left side," a weak "triceps reflex on the left side," and "an absent Achilles reflex on the right," and said those statements constituted findings of radiculopathy.[2] Martire further stated:

"Therefore if one strictly follows the rules in the *AMA Guidelines*, the patient would receive 10% for Lumbosacral Category III and 15% for Cervical Thoracic Category III for documented radiculopathy after his work related injury."

[¶ 3] On April 30, 1996, the Bureau awarded McCollum $9,450 for a 15 percent impairment of the whole body for his cervical injury. On June 3, 1996, the Bureau awarded an additional $2,520 for a 5 percent impairment of the whole body for McCollum's lumbosacral injury, which, when combined with the 15 percent impairment for the cervical injury, the Bureau found, resulted in a 19 percent impairment of the whole body for the cervical and lumbar injuries.

[¶ 4] McCollum appealed to the district court, which reversed the Bureau's June 3, 1996, order, remanded the matter to the Bureau, and ordered it to "adopt the 10 per cent award for the DRE Lumbosacral Category III based on impairment showing radiculopathy as reported by Dr. Martire on February 23, 1996."[3]

[¶ 5] The district court had jurisdiction under N.D. Const. Art. VI, § 8, and N.D.C.C. §§ 27–05–06, 28–32–15, and 65–10–01. The appeal was timely under N.D.R.App.P. 4(a), and N.D.C.C. § 28–32–21. This Court has jurisdiction under N.D. Const. Art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–21.

## II

[¶ 6] The Bureau contends it properly denied an impairment award for pre-surgery radiculopathy no longer present on the date of the impairment evaluation. McCollum contends that, under *AMA Guides* (4th ed.), § 3.3d, p. 3/100,[4] pre-surgery radiculopathy entitles him to a 10 percent whole-body permanent impairment rating, as stated by Dr. Martire, even if a post-surgery evaluation shows no evidence of radiculopathy at that time.

[¶ 7] Dr. Martire's permanent partial impairment evaluation was performed on May

---

1. A hemilaminectomy is the removal of vertebral laminae (layers) on one side. Dorland's Illustrated Medical Dictionary (25th ed.1974), p. 693.

2. A radiculopathy is a disease of the nerve roots. Dorland's Illustrated Medical Dictionary (25th ed.1974), p. 1303.

3. The district court rejected McCollum's arguments that (1) "the Legislature unlawfully delegated its authority when in N.D.C.C. 65–05–12 it established standards 'as published in the most recent edition'" of the *AMA Guides*, and (2) "the circumstances of the case warrant an award of attorney fees in excess of those prescribed by the Bureau in accordance with N.D.C.C. § 65–02–

08." McCollum did not cross-appeal. An appellee who has not cross-appealed may not seek a more favorable result on appeal than he or she received in the trial court. *In re Estate of Laschkewitsch*, 507 N.W.2d 65, 68 (N.D.1993).

4. *AMA Guides* (4th ed.), § 3.3d, p. 3/100 says:

"With the Injury Model, surgery to treat an impairment does not modify the original impairment estimate, which remains the same in spite of any changes in signs or symptoms that may follow the surgery and irrespective of whether the patient has a favorable or unfavorable response to treatment."

4, 1995. At that time, N.D.C.C. § 65–05–12 required impairment evaluations to be done "in accordance with . . . the most recent edition" of the *AMA Guides*. We have recently construed N.D.C.C. §§ 65–05–12 and 65–01–02 (defining permanent impairment in accordance with the most current edition of the *AMA Guides* ) as adopting the "most recent" or "most current" edition of the AMA Guides in existence at the time of their enactment. *McCabe v. North Dakota Workers Comp. Bureau,* 1997 ND 145, ¶ 16, 567 N.W.2d 201.

[¶ 8] When N.D.C.C. §§ 65–05–12 and 65–01–02 were amended in 1989, the "most recent" and the "most current" edition of the *AMA Guides* was the Third Edition, which was first printed in November 1988.[5] N.D.C.C. § 65–01–02 was amended and reenacted in 1991. 1991 N.D. Laws, Ch. 714, § 23. After its amendment in 1989, N.D.C.C. § 65–05–12 was not again amended or reenacted. N.D.C.C. § 65–05–12 was repealed in 1995. 1995 N.D. Laws, Ch. 624, § 2. The 1995 legislation was referred and its operation was suspended under N.D. Const. Art. III, § 5. It was approved in the June 11, 1996, primary election (1997 N.D. Laws, Ch. 566), and took effect thirty days later. N.D. Const. Art. III, § 8. Because the Third Edition of the *AMA Guides* was the edition in existence when N.D.C.C. § 65–05–12 was amended and reenacted in 1989 (until its repeal became effective in 1996), it was the edition of the *AMA Guides* applicable when McCollum's impairment was evaluated on May 4, 1995. Thus, we conclude McCollum's impairment should have been evaluated in accordance with the Third Edition of the *AMA Guides,* rather than the Fourth Edition.

### III

[¶ 9] The district court judgment is affirmed to the extent it reversed the Bureau's order of June 3, 1996, and remanded the matter to the Bureau, and is reversed to the extent it ordered the Bureau to adopt Dr.

Martire's impairment evaluation reported on February 23, 1996. *The matter is remanded to the district court with directions to remand it to the Bureau for redetermination of McCollum's impairment in accordance with the Third Edition of the AMA Guides.*

[¶ 10] VANDE WALLE, C.J., and NEUMANN, MARING and MESCHKE, JJ., concur.

---

5. The Third Edition (Revised) of the *AMA Guides* was first printed in December 1990. The Fourth Edition was first printed in June 1993.