1997 ND 177

Joseph FEIST, Claimant and Appellant,

v.

NORTH DAKOTA WORKERS
COMPENSATION BUREAU,
Appellee,

and

Northern Bottling Company, Respondent.

Civil No. 960382.

Supreme Court of North Dakota.

Sept. 8, 1997.

Rehearing Denied Oct. 21, 1997.

Mark G. Schneider (argued), of Schneider, Schneider & Schneider, Fargo, for claimant and appellant. Appearance by Daniel Phillips.

Brent J. Edison (argued), Special Assistant Attorney General, Bismarck, for appellee.

NEUMANN, Justice.

[¶ 1] Joseph Feist appealed from a December 5, 1996, district court judgment affirming a May 29, 1996, Workers Compensation Bureau decision in which the Bureau determined Feist was not entitled to a higher permanent partial impairment award than he had earlier received, determined Feist was not entitled to a chronic pain evaluation, and affirmed its March 5, 1993, order awarding Feist permanent partial impairment benefits of $3,220. We affirm.

I

[¶ 2] Feist injured his lumbar spine in 1969 and received a 15 percent whole-body permanent partial impairment award. Feist injured his cervical spine in 1977 and received a 16.5 percent whole-body permanent partial impairment award. Feist injured his lumbar spine again in 1986. On March 5, 1993, the Bureau awarded Feist 28 weeks of compensation for permanent partial impairment. In calculating the award, the Bureau used the American Medical Association's *"Guides to the Evaluation of Permanent Impairment"* [*AMA Guides* ] (3rd ed. rev.)[1] and combined the previous impairment ratings with the rating for the 1986 injury and subtracted the weeks of compensation previously awarded for the 1969 lumbar injury.

[¶ 3] At the Bureau's request, Dr. Melissa Ray conducted a permanent partial impairment evaluation of Feist on March 28, 1994. Ray reported, in part:

"I do note on physical examination today that the patient demonstrates increased rigidity in the muscular [sic] about the lower thoracic and upper lumbar spinal regions. There is pain with palpation over the cicatrix area today as well. Lateral flexion and extension films of the lumbar spine show significant degenerative osteoarthritic changes to the lower lumbar vertebrae and first sacral vertebra. The anterior osteophytes are quite marked over L4–5 and S1. The patient demonstrates no loss of motion segment integrity in review of the lateral flexion and extension films.

"Utilizing the 'Guides to the Evaluation of Permanent Impairment'—Fourth Edition, the patient falls into DRE lumbosacral category 3 radiculopathy and is given a ten

---

1. We will refer to either the *AMA Guides* or to separate editions of the *AMA Guides,* which we will refer to as the Third Edition, the Third Edition (Revised), or the Fourth Edition.

percent whole person impairment for the injury he sustained to the lumbosacral spinal region. (Although I do not have any medical records prior to 1992, the physical therapy notes do reflect that the patient did relay right lower extremity radicular symptoms to Karen Rasmusson, PT, on 7/22/92 prior to his first PPI). It is my opinion that Mr. Feist has reached maximal medical improvement pertaining to his low back."

[¶ 4] On April 8, 1994, the Bureau issued an order denying additional permanent partial impairment benefits. The Bureau found, based on Dr. Ray's evaluation and the Bureau's review:

"The greater weight of the evidence does not indicate that claimant is entitled to an additional permanent partial impairment award.

| "10% | Whole Body For Lumbar | 50 weeks |
|------|------------------------|----------|
| | Less Prior Awards Under This Claim # and 69 199787 T | −103 weeks |
| | Now Due | 0 weeks" |

Feist petitioned for reconsideration under NDCC 28–32–14.

[¶ 5] A formal hearing was held before an independent hearing officer on March 15, 1996. The hearing officer recommended:

"By the greater weight of the evidence, Claimant's cervical impairment and lumbar impairment was appropriately considered and calculated within the context of the March 5, 1993 PPI award and Claimant is not entitled to an upward adjustment of 4% or a 16.5%."

The hearing officer recommended the following on Feist's claim for an additional award for peripheral spine nerve injury:

"By the greater weight of the evidence, the Claimant is not entitled to a remand with instructions to the Bureau to evaluate an additional impairment rating for peripheral spine nerve injury."

On Feist's claim for chronic pain, the hearing officer recommended:

"The Claimant is correct in asserting that he is entitled to a Chronic Pain Assessment under Chapter 15, of the *AMA Guides*, in order to assess a further impairment based upon the Claimant's chronic pain."

The hearing officer recommended an order affirming the Bureau's order of March 5, 1993, and remanding the Bureau's order of April 8, 1994, for a chronic pain evaluation under Chapter 15 of the Fourth Edition, which is the newest edition of the *AMA Guides*.

[¶ 6] In its order of May 29, 1996, the Bureau adopted the hearing officer's recommendations, except with regard to Feist's claim for chronic pain. On that issue, the Bureau concluded:

"9. The administrative law judge was mistaken, as a matter of law, in recommending a remand to the Bureau for an evaluation and impairment rating under Chapter 15 of the AMA 'Guides,' fourth edition. Dr. Ray testified that the claimant's pain is the type of pain incorporated into DRE Lumbosacral Category III, which indeed requires radicular pain.

"10. Claimant is not entitled to an additional permanent partial impairment award.

"11. Claimant is not entitled to a multidisciplinary evaluation and impairment rating under Chapter 15 of the AMA 'Guides,' fourth edition."

[¶ 7] The district court affirmed the Bureau's decision and Feist appealed to this court.

## II

[¶ 8] In an appeal involving a Bureau decision, we review the decision of the Bureau, rather than that of the district court, although the district court's analysis is entitled to respect if its reasoning is sound, *Effertz v. North Dakota Workers Comp. Bureau*, 481 N.W.2d 218, 220 (N.D.1992), and "because the legislatively mandated review by the district court cannot be ineffectual," *Medcenter One, Inc. v. Job Service North Dakota*, 410 N.W.2d 521, 524 (N.D.1987). Under NDCC 28–32–19 and 28–32–21, we affirm an agency's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision

is not supported by its conclusions of law, or the decision is not in accordance with the law. *Frohlich v. North Dakota Workers Comp. Bureau,* 556 N.W.2d 297, 300 (N.D. 1996). Our review of an administrative agency's findings of fact is limited to determining if a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Gale v. North Dakota Bd. of Podiatric Medicine,* 1997 ND 83, ¶ 10, 562 N.W.2d 878. The interpretation of a statute is a question of law fully reviewable on appeal. *Jensen v. N.D. Workers Comp. Bureau,* 1997 ND 107, ¶ 9, 563 N.W.2d 112. Although we have construed workers compensation laws liberally in favor of injured workers,[2] *e.g., Tooley v. Alm,* 515 N.W.2d 137, 141 (N.D.1994); *Kallhoff v. North Dakota Workers' Comp. Bureau,* 484 N.W.2d 510, 513 (N.D.1992), a claimant has the burden of proving he or she is entitled to participate in the workers compensation fund. *Frohlich,* 556 N.W.2d at 301; NDCC 65-01-11.

■ [¶ 9] Feist contends the independent hearing officer's decision should be deemed the Bureau's final decision, because the Bureau lacks authority to request, and the Office of Administrative Hearings lacks authority to issue, recommended decisions. We recently addressed this issue in *Blanchard v. North Dakota Workers Comp. Bureau,* 1997 ND 118, 565 N.W.2d 485. Under NDCC 54-57-03(2) and (5), the Bureau may request the Office of Administrative Hearings to designate an administrative law judge [ALJ] to preside over a Bureau proceeding. *Id.* at ¶ 13. We held "NDCC 28-32-13 differentiates between final orders and recommended ones based on whether the person presiding was 'authorized by the agency head or by law' to issue a final order." *Id.* at ¶ 14. We held "an ALJ's decision is a final order when the Legislature has authorized the ALJ to issue a final order, or when the requesting agency has authorized the ALJ to issue a final order." *Id.* at ¶ 14. We held the ALJ's decision was a recommendation and not a final order because NDCC 65-02-12 "does

not expressly authorize an ALJ to issue a final order for the Bureau," *id.* at ¶ 15, and because the Bureau had authorized the ALJ to issue only a recommended order. The ALJ presiding over the hearing in this case stated in his decision:

> "The Bureau requested the designation of a hearing officer from the Office of Administrative Hearings to conduct a hearing and to issue recommended findings of fact and conclusions of law in regard to this matter."

That statement "satisfactorily demonstrate[s] the Bureau authorized the ALJ to issue a recommended order." *Id.* at ¶ 17. We conclude the ALJ's decision in this case was a recommendation and was not a final order.

### III

■ [¶ 10] Feist contends the Bureau's failure to promulgate regulations outlining procedures for its review of recommended decisions by administrative law judges and its failure to allow Feist to participate in the Bureau's review of the ALJ's recommended decision violated his due process rights. The claimant in *Blanchard* advanced a similar argument. We held "NDCC 28-32-13(3) authorizes, but does not require, the Bureau to adopt rules for review of a hearing officer's recommendation." *Id.* at ¶ 20. If, however, an administrative agency rejects a hearing officer's recommendation, it must explain its rationale for not following the recommendation. *Id.* at ¶ 21. The requirement that an administrative agency explain its rationale for not following a hearing officer's recommendation, combined with the opportunity for judicial review, which "provides the ultimate due process protection to those aggrieved by agency decisions," *Municipal Servs. Corp. v. State,* 483 N.W.2d 560, 563 (N.D.1992), adequately protect a claimant's due process rights.

### IV

[¶ 11] In rating the percentage of Feist's functional impairment for its 1993 permanent

---

2. The following language was added to NDCC 65-01-01 in 1995: "A civil action or civil claim arising under this title which is subject to judicial review, must be reviewed solely on the merits of the action or claim. This title may not be construed liberally on behalf of any party to the action or claim." 1995 N.D. Laws, ch. 605, § 1.

partial impairment award, the Bureau used the *AMA Guides* (Third Edition (Revised)). In its 1994 order denying additional permanent partial impairment benefits, the Bureau relied in part on Dr. Ray's evaluation, which applied the Fourth Edition of the *AMA Guides.*

[¶ 12] In November 1988, the American Medical Association printed its Third Edition to the Guides to the Evaluation of Permanent Impairment. In 1989, the North Dakota Legislative Assembly amended NDCC § 65–05–12 to provide that "[a]ny rating of the percentage of functional impairment should be in accordance with ... the most recent edition of the American medical association's 'Guides to the Evaluation of Permanent Impairment.'" N.D. Sess. Laws, ch. 765, § 4 (1989). Section 65–05–12, NDCC, was not amended or reenacted again before Feist's PPI evaluation in 1994. The American Medical Association printed its Third Edition (Revised) in December 1990, and its Fourth Edition of the Guides in June 1993.

[¶ 13] We recently construed NDCC §§ 65–05–12 and 65–01–02(26) to "adopt the 'most recent' and 'most current' edition of the Guides in existence at the time of their enactment." *McCabe v. North Dakota Workers Comp. Bureau,* 1997 ND 145, ¶ 16, 567 N.W.2d 201. The Third Edition of the Guides was in existence when the legislature amended and reenacted NDCC § 65–05–12; therefore, the Third Edition still applied for rating purposes in 1994 when Feist underwent an impairment evaluation after reaching his maximum medical improvement.[3] Although we note the Bureau applied the *AMA Guides* Third Edition (Revised) in calculating Feist's award, and the Fourth Edition in denying additional permanent partial impairment benefits, the result in this case is the same under the Third Edition.[4]

■ [¶ 14] In its 1993 permanent partial impairment award, the Bureau calculated Feist's impairment rating by combining his lumbar impairment rating with a previous cervical rating. Feist contends "there is nothing in the *Guides* (any edition) which would allow the Bureau to combine the ratings and awards for two separate claims pertaining to two separate anatomical impairments." We disagree. The Third Edition and the Third Edition (Revised) each contain a "Combined Values Chart" bearing a legend stating in part:

"To combine any two impairment values, locate the larger of the values on the side of the chart and read along that row until you come to the column indicated by the smaller value at the bottom of the chart. At the intersection of the row and the column is the combined value.

\*   \*   \*   \*   \*   \*

3. NDCC § 65–05–12 was repealed in 1995. N.D. Sess. Laws, ch. 624, § 2 (1995). Section 65–05–12.2, providing in subsection 6 that, unless otherwise provided, "a doctor evaluating the impairment of an injured employee shall use the edition of the American medical association's 'Guides to the Evaluation of Permanent Impairment' in effect on the date of the employee's evaluation to establish a rating for impairment of function," was enacted in 1995. (N.D.Sess.Laws, ch. 624, § 1). The 1995 legislation was referred and it was approved in the June 11, 1996, primary election. N.D. Sess. Laws, ch. 566. It took effect thirty days later. N.D. Const., Art. III, § 8.

4. Whether the applicant actually had a permanent impairment was not an issue in this case, nor was it an issue in *McCabe v. North Dakota Workers Comp. Bureau,* 1997 ND 145, 567 N.W.2d 201, *Coleman v. North Dakota Workers Comp. Bureau,* 1997 ND 168, 567 N.W.2d 853, or *McCollum v. North Dakota Workers Comp. Bureau,* 1997 ND 163, 567 N.W.2d 811. Had the existence of a permanent impairment been an issue, the definition of "permanent impairment" in NDCC 65–01–02(26) would have applied. Like NDCC 65–05–12, NDCC 65–01–02, was amended in 1989 (N.D.Sess.Laws, ch. 765, § 1, (1989)) to refer to the "most current" edition of the *AMA Guides;* at that time the Third Edition of the *AMA Guides* was in effect. However, 65–01–02 was also amended and reenacted in 1991, following publication of the *AMA Guides* Third Edition (Revised) in December 1990. N.D. Sess. Laws, ch. 714, § 23 (1991). Because *McCabe* construed 65–05–12 and 65–01–02(26) to adopt the most recent and most current editions of the *AMA Guides* in existence at the time of their enactment, at the time of Feist's award in 1993 and impairment evaluation in 1994 the *AMA Guides* Third Edition (Revised) would have applied to a determination of whether Feist actually had a permanent impairment, as defined by NDCC 65–01–02(26). The rating of the percentage of Feist's impairment, however, should have been done under the older Third Edition of the *AMA Guides,* adopted for rating purposes by the amendment of NDCC 65–05–12 in 1989.

"If three or more impairment values are to be combined, select any two and find their combined value as above. Then use that value and the third value to locate the combined value of all. This process can be repeated indefinitely, the final value in each instance being the combination of all the previous values."

The legends on the combined values charts do not indicate that "two separate anatomical impairments" may not be combined. The combined values charts allow any two or more impairment values to be combined. That impairments of separate anatomical areas of the body may be combined in one impairment value is made even more clear in the combined values chart in the Fourth Edition, which, in addition to the same language as that in the Third and Third (Revised) editions, contains the following sentence: "*Note:* If the impairments from two or more organ systems are to be *combined* to express a whole-person impairment, each must first be expressed as a whole-person impairment percent." We conclude the Bureau was authorized to combine the impairment ratings for Feist's lumbar and cervical impairments.

[¶ 15] As Feist noted in his brief, when the Bureau awarded Feist the permanent impairment award challenged here, NDCC 65–05–12 provided in part: "Any subsequent award for impairment must be made minus any previous award given on any earlier claim or the same claim for that same member or body part." That provision on awards for impairments does not undercut in any way the Bureau's ability to combine impairment ratings.

V

[¶ 16] Feist contends he is entitled to a chronic pain syndrome evaluation under Chapter 15 of the *AMA Guides* Fourth Edition in order to assess an additional impairment based on chronic pain. According to Feist, the record supports that he has established a "presumptive diagnosis of chronic pain warranting an evaluation under Chapter 15." The Bureau argues Feist is not entitled to an additional permanent impairment for pain because the DRE Category III rating contemplated Feist's pain.

[¶ 17] The *AMA Guides* recognize pain as being either "acute" or "chronic." *AMA Guides* (3rd ed.), p. 240. The Stedman's Medical Dictionary (5th Lawyers' Edition 1982) p. 20, defines "acute" as "[o]f short and sharp course, *not chronic;* " and, at p. 278, Stedman's defines "chronic" as "[o]f long duration; denoting a disease of slow progress and long continuance." (Emphasis added.) According to the *AMA Guides,* chronic pain may "contribute to the evolution of the chronic pain syndrome. Within the framework of this definition, chronic pain may exist in the absence of chronic pain syndrome, but chronic pain syndrome always presumes the presence of chronic pain." Chronic pain syndrome "represents a biopsycho-social phenomenon of maladaptive behavior with far reaching medical, social, and economic consequences." *AMA Guides* (3rd ed.), p. 241. The AMA has outlined "characteristics (the six D's) [that] should be considered as establishing the diagnosis of a chronic pain syndrome." *Id.* The six characteristics are: duration, dramatization, drugs, despair, disuse, and dysfunction.

[¶ 18] Feist completed a chronic pain management program in February 1993. On February 19, 1993, the coordinator of the program reported Feist "demonstrate[d] no chronic pain behavior." At the hearing, Feist presented evidence establishing he suffers from pain, however, he did not present medical evidence establishing he was suffering from "chronic pain," nor that he was diagnosed with "chronic pain syndrome." Feist has not established he suffers "chronic pain," nor that he has been diagnosed with "chronic pain syndrome."

[¶ 19] Because the *AMA Guides* Third Edition was applicable when Feist's impairment was evaluated in 1994, and because Feist has not shown he was diagnosed with "chronic pain syndrome," we need not address the issues Feist has raised with regard to interpreting provisions of the *AMA Guides* Fourth Edition for a "chronic pain syndrome" evaluation or impairment assessment.

## VI

[¶ 20] Feist contends the Bureau should have arranged for an evaluation to determine the extent of impairment due to peripheral spinal nerve disorder. After receiving what the Bureau's medical director termed "one of the poorest reports I have ever seen in regard to a permanent partial impairment award" from Feist's treating physician, the Bureau unsuccessfully sought clarification of the evaluation by Feist's treating physician. As Feist's attorney observed in his brief in this appeal, "[d]espite being approached to clarify application of table 3 and the degree of impairment Feist suffers under table 3, (App.124)," Feist's physician "was unable to do so." After the Bureau's determination in 1993, Feist sought an additional impairment rating for loss of sensation. The Bureau then had Dr. Ray perform an impairment evaluation, which we have already set forth in paragraph 3. Feist has not shown that the Bureau erred in concluding Feist failed to show he was entitled to an evaluation of additional impairment for peripheral spine nerve injury.

[¶ 21] The judgment is affirmed.

[¶ 22] VANDE WALLE, C.J., and MARING and SANDSTROM, JJ., concur. MESCHKE, J., concurs in the result.