1999 ND 144

Edward SAARI, Claimant and Appellee,

v.

NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant.

and

Lake Ready Mix, Inc., Respondent

No. 980342.

Supreme Court of North Dakota.

July 29, 1999.

Mark G. Schneider (argued) and Steven C. Schneider (appearance), Schneider, Schneider & Phillips, Fargo, for claimant and appellee.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, for appellant.

KAPSNER, Justice.

[¶ 1] The Workers Compensation Bureau appealed from a judgment which reversed a Bureau order awarding Edward Saari permanent partial impairment (PPI) benefits and held the Bureau must follow former N.D.C.C. §§ 65–05–12 and 13, rather than N.D.C.C. § 65–05–12.2, in calculating Saari's PPI award. We conclude the Bureau correctly determined Saari's claim for PPI benefits is governed by N.D.C.C. § 65–05–12.2. We reverse the judgment.

I

[¶ 2] On June 4, 1987, Saari injured his neck and left shoulder while working for Lake Ready Mix, Inc., in Devils Lake. The Bureau accepted Saari's claim and paid him medical and disability benefits. The Bureau has been providing Saari permanent total disability benefits since January 1991.

[¶ 3] On August 13, 1997, the Bureau wrote Saari's treating physician and asked whether Saari had reached maximum medical improvement[1] and, if so, when it occurred. The Bureau also asked whether the doctor believed Saari was entitled to an impairment rating above 16 percent. The doctor responded that Saari had reached maximum medical improvement and there had been no significant improvement to his injuries since June 4, 1987. The doctor also told the Bureau he be-

lieved Saari had an impairment of more than 16 percent.

[¶ 4] In August 1997, the Bureau told Saari he may be entitled to a PPI award as a result of his work injury, and Saari requested a PPI evaluation. Saari was evaluated on December 11, 1997, by a physician who used the Fourth Edition of the American Medical Association's Guides to the Evaluation of Permanent Impairment (AMA Guides). The doctor concluded Saari had sustained a 5 percent "whole body" impairment for his cervical injury, a 22 percent impairment of his upper extremity for abnormal motion, and a 0.7 percent impairment of the upper extremity for sensory loss. The Bureau determined the upper extremity impairment was 13.7 percent when computed as a "whole body" figure. Combining the cervical and upper extremity impairments under the AMA Guides, the Bureau decided Saari had sustained a 17.7 percent whole body PPI from his work injury.

[¶ 5] In making its calculations, the Bureau applied N.D.C.C. § 65–05–12.2, which became effective July 10, 1996. *See McCabe v. North Dakota Workers Compensation Bureau*, 1997 ND 145, ¶ 6 n. 1, 567 N.W.2d 201. The parties stipulated Saari reached maximum medical improvement before July 10, 1996. Because Saari's PPI was determined after July 10, 1996, the Bureau applied the new statute, found Saari was entitled to 8.5 weeks of PPI compensation, and entered an order awarding Saari a total of $1,037. Saari argued his PPI award should have been calculated under N.D.C.C. §§ 65–05–12 and 13, the statutes in effect before July 10, 1996, when they were repealed and replaced by N.D.C.C. § 65–05–12.2. *See* 1995 N.D. Sess. Laws ch. 624, § 2. Saari contended under the old law he was entitled to a PPI award for his cervical injury of 25.9 percent for "whole body" impairment and 22.7 percent for his left upper

---

1. The date of maximum medical improvement is "the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated based upon reasonable medical probability." N.D.C.C. § 65–01–02(13).

extremity, for an award totaling $24,-026.25. The matter was heard by an administrative law judge (ALJ), who agreed with the Bureau's argument the new law applied. The Bureau adopted the ALJ's recommendation, and Saari appealed to district court.

[¶ 6] The court reversed the Bureau's decision, concluding the Bureau must follow the old law, N.D.C.C. §§ 65–05–12 and 13, in determining Saari's PPI benefits. The court found Saari's legal rights under the statute became vested on the date of his injury, and "[a]ny law that is passed subsequent to June 4, 1987 that diminishes ... Saari's benefits is void as it relates to the injuries sustained or impairments derived from the June 4, 1987 incident." The court did not decide which AMA Guide should be followed in determining the extent of impairment because Saari "has no vested right in how impairment is determined within a medical context." The Bureau appealed.

## II

[¶ 7] On appeal, we review the Bureau's decision, not the district court's decision. *Loberg v. North Dakota Workers Compensation Bureau*, 1998 ND 64, ¶ 5, 575 N.W.2d 221. We affirm the Bureau's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the appellant's constitutional rights, or the Bureau's rules or procedures deprived the appellant of a fair hearing. *Geck v. North Dakota Workers Compensation Bureau*, 1998 ND 158, ¶ 5, 583 N.W.2d 621. Deciding whether N.D.C.C. § 65–05–12.2 or former N.D.C.C. §§ 65–05–12 and 13 governs Saari's claim for PPI benefits is a question of law, fully reviewable by this Court. *See Global Financial Services v. Duttenhefner*, 1998 ND 53, ¶ 5, 575 N.W.2d 667.

## A

[¶ 8] PPI benefits are intended to compensate injured workers for impairment, actual loss, loss of use, or partial loss of use of a portion of the body. *See Effertz v. North Dakota Workers' Compensation Bureau*, 481 N.W.2d 218, 219 n. 1 (N.D.1992); *Kroeplin v. North Dakota Workmen's Compensation Bureau*, 415 N.W.2d 807, 809 (N.D.1987). At the time of Saari's 1987 work injury, PPI benefits were governed by N.D.C.C. §§ 65–05–12 and 13, which set forth a schedule of payment for loss of body members and for percentages of permanent impairment. In 1995 the Legislature changed the PPI law by enacting N.D.C.C. § 65–05–12.2. *See* 1995 N.D. Sess. Laws ch. 624, § 1. This legislation increased the amount of benefits for some of the most severely impaired workers, but decreased the amount of benefits for less severely impaired workers and eliminated benefits for workers whose whole body impairments fell below 16 percent. *Id.* The legislation also required doctors evaluating workers for PPI to use the edition of the AMA Guides "in effect on the date of the employee's evaluation to establish a rating for impairment of function." *Id.* The new legislation repealed N.D.C.C. §§ 65–05–12 and 13 and was slated to become "effective on August 1, 1995, for all permanent impairment awards determined after July 31, 1995, irrespective of injury date." 1995 N.D. Sess. Laws ch. 624, § 3. However, the bill was referred and was approved by voters in June 1996, resulting in an effective date for the legislation of July 10, 1996. *See Feist v. North Dakota Workers Compensation Bureau*, 1997 ND 177, ¶ 13 n. 3, 569 N.W.2d 1.

[¶ 9] In support of Saari's claim the old PPI law should be applied in computing his benefits, Saari argues his right to benefits under the Workers Compensation Act resulting from his injury vested on the date of his injury, June 4, 1987. In the alternative, Saari argues if his right to PPI benefits did not vest on the date of injury,

his right to benefits vested at least on the date of his maximum medical improvement, which the parties stipulated was before July 10, 1996, the effective date of the new PPI law. Saari further contends the date of his injury serves as a "floor" for workers compensation benefits above which the Legislature may raise future benefits, but below which the Legislature may not lower future benefits.

### B

[¶ 10] Unless otherwise provided, the statutes in effect on the date of an injury govern workers compensation benefits. *Loberg*, 1998 ND 64, ¶ 9, 575 N.W.2d 221. Here, the Legislature specifically provided the new law would apply to all PPI awards determined after the statute's effective date, "irrespective of injury date." 1995 N.D. Sess. Laws ch. 624, § 3. However, statutory enactments may not operate retrospectively to abrogate a vested right or a valid contractual obligation. *See, e.g., Thompson v. North Dakota Workers' Compensation Bureau*, 490 N.W.2d 248, 251 (N.D.1992). A vested right is an immediate or fixed right to present or future enjoyment that does not depend upon an event that is uncertain. *See, e.g., Jensen v. North Dakota Workers Compensation Bureau*, 1997 ND 107, ¶ 11, 563 N.W.2d 112.

[¶ 11] This Court's decision in *Gregory v. North Dakota Workmen's Compensation Bureau*, 369 N.W.2d 119 (N.D.1985) (*Gregory I* ), is instructive. In *Gregory I*, the Court considered whether the rate of payment for a PPI award under former N.D.C.C. § 65–05–12 was the statutory rate in effect at the time the impairment was determined, or the statutory rate in effect on the date the compensable injury occurred. At the time, N.D.C.C. § 65–05–12 did not clearly specify whether the rate to be paid was the rate on the date of injury or the date of determination. The Bureau ruled the claimant had a 20 percent whole body impairment and paid the rate in effect in 1958, when the claimant

was first injured. The claimant sought compensation at the rate in effect in 1983, when his impairment was actually determined. This Court specifically rejected authority from other jurisdictions holding impairments arise on the date of injury, held the date of the determination of the impairment controlled which rate was to be applied, and ordered the claimant's PPI benefits paid at the 1983 rate. *Gregory I*, 369 N.W.2d at 121–22. *Gregory I* supports the Bureau's decision to apply the new PPI law in calculating Saari's award.

[¶ 12] Saari raises numerous arguments in an attempt to distinguish *Gregory I* from the present case. Saari first contends *Gregory I* is distinguishable because that case dealt with the applicable rate of, rather than the vested nature of the claimant's right to, the PPI benefits. Saari's proposed distinction is one without a legal difference.

[¶ 13] The Court in *Gregory I* rejected the Bureau's argument calculating impairment awards by the rate in effect on the date of determination would result in an impermissible retroactive application of the later statutory rate:

> This retroactivity argument is premised on the faulty assumption that the impairment always takes place on the date of injury despite the fact that it sometimes does not become a permanent impairment until a later date as in this case. Common sense, as well as the plain language of § 65–05–12, tells us that an impairment does not take place until it is manifest and determined to be permanent.

*Gregory I*, 369 N.W.2d at 122. The statutory 1983 rate of payment in *Gregory I* could have been interpreted as impermissibly retroactive only if its application would have impaired a vested or contractual right of the claimant. *See, e.g., Ash v. Traynor*, 1998 ND 112, ¶ 13, 579 N.W.2d 180; *Jensen*, 1997 ND 107, ¶¶ 11–12, 563 N.W.2d 112. Therefore, *Gregory I*, by necessary implication, holds any right to PPI benefits does not vest on the date of

injury, but vests on the date the impairment is determined to be permanent. Under *Gregory I*, until there has been an actual determination an impairment is permanent, no right has vested because at the time of the injury the existence of the right depends on a future evaluation, an event the result of which is uncertain. *See Thompson*, 490 N.W.2d at 252 n. 4. *Cf. Sprunk v. North Dakota Workers Compensation Bureau*, 1998 ND 93, ¶¶ 14–15, 576 N.W.2d 861 (holding which date or statute governs claimant's right to a PPI award was not issue ripe for review because it depended on future contingencies of if and when claimant reaches maximum medical recovery, and if and when an impairment becomes manifest and is determined to be permanent).

[¶ 14] Moreover, *Gregory I* does not support Saari's alternative argument his right to PPI benefits vests on the date of maximum medical improvement. *Gregory I*, 369 N.W.2d at 122, makes clear a claimant's right to PPI benefits does not become fixed or vested until the claimant has been evaluated and determined eligible for a PPI award. The date of a claimant's maximum medical improvement is a preliminary step in the process of establishing entitlement to a PPI award. *See Tooley v. Alm*, 515 N.W.2d 137, 142 (N.D.1994). *See also Effertz*, 481 N.W.2d at 222 (holding, in line with *Gregory I*, claimant was entitled to PPI award under 1989 rate in effect when claimant was evaluated rather than 1963 rate in effect when claimant reached maximum medical recovery). A claimant's right to a PPI award does not vest on the date of injury or on the date of maximum

medical improvement because more is necessary before entitlement to a PPI award is established.

[¶ 15] Saari also contends *Gregory I* is distinguishable because that case resulted in the claimant receiving a higher, rather than lower, rate of benefits. Saari contends this result is compatible with the liberal construction rule and argues this Court has not interpreted the Workers Compensation Act to decrease benefits below the floor of benefits available on the claimant's date of injury. Saari argues, under our existing case law, the Legislature may increase benefits under the Act, regardless of the date of injury or maximum medical improvement, but may not decrease those benefits in violation of the Bureau's obligation to the injured worker.[2] Saari's arguments are flawed; there is no principled basis for construing *Gregory I* to afford all claimants the highest amount of PPI benefits available.

[¶ 16] Saari correctly points out the Court in *Gregory I*, 369 N.W.2d at 122, applied the liberal construction rule that "our Workmen's Compensation Act is to be construed liberally so its benefit provisions can be extended to all those who can fairly be brought within them." *See also, e.g., Inglis v. North Dakota Workmen's Compensation Bureau*, 312 N.W.2d 318, 322 (N.D.1981). However, the Legislature in 1995 amended N.D.C.C. § 65–01–01 to read: "This title may not be construed liberally on behalf of any party to the action or claim." 1995 N.D. Sess. Laws ch. 605, § 1.[3] Saari further argues even

---

2. To illustrate this argument, Saari does not actually seek the PPI benefits under the law in effect at the time of his 1987 injury. In 1989, the Legislature amended N.D.C.C. §§ 65–05–12 and 13 to change the benefit rate from "sixty dollars per week" to a "lump sum, calculated by multiplying thirty-three and one-third percent of the average weekly wage in this state rounded to the next highest dollar, on the date the impairment is determined...." 1989 N.D. Sess Laws ch. 765, §§ 4–5. Saari contends he is entitled to this 1989 increase in benefits under the old PPI

law which occurred after the date of his injury.

3. The Attorney General has opined whether the Legislature's abrogation of the liberal construction rule can be retroactively applied to claims arising out of injuries occurring before its effective date depends on the statute interpreted and whether vested rights would be altered, and because this Court ruled in *Gregory I* the law in effect when a PPI is determined governs, it would not be an impermissible retroactive application to prohibit use of

without the liberal construction rule, this Court still construes the Workers Compensation Act "to afford relief and avoid forfeiture." *Zueger v. North Dakota Workers Compensation Bureau*, 1998 ND 175, ¶ 12, 584 N.W.2d 530. Even assuming the liberal construction rule applies in this case, we do not ignore the clear language of a statute under the guise of a liberal construction. *See, e.g., Rogers v. North Dakota Workers Compensation Bureau*, 482 N.W.2d 607, 611 (N.D.1992); *Evjen v. North Dakota Workers Compensation Bureau*, 429 N.W.2d 418, 421 (N.D.1988). Here, the Legislature unambiguously provided the new law governed all PPI awards determined after its effective date, "irrespective of injury date." 1995 N.D. Sess. Laws ch. 624, § 3.

[¶ 17] Saari relies on several cases to support his argument he is entitled to the higher PPI award. Each case, however, is distinguishable. *Gregory v. North Dakota Workers Compensation Bureau*, 1998 ND 94, 578 N.W.2d 101 (*Gregory II* ), involved the Bureau's attempt to discontinue ongoing disability benefits the claimant had been receiving, not because his medical condition had changed, but because he had turned age 65. The Court in *Gregory II*, 1998 ND 94, ¶¶ 32–33, 578 N.W.2d 101, concluded because the claimant had a significant reliance interest in those ongoing benefits and the Bureau had a valid obligation to pay them, the Bureau's attempt to cancel them at age 65 impaired that obligation. In this case, the Bureau does not seek to cancel PPI benefits Saari was previously receiving. *Jensen*, 1997 ND 107, ¶¶ 11–12, 563 N.W.2d 112, involved an unsuccessful attempt by the Bureau to apply a statutory amendment to deny past disability benefits to which the claimant already had a vested right. In this case, the Bureau's application of the new PPI law does not affect any past benefits to which Saari had a vested right, but only

the liberal construction rule to claims arising out of PPI determinations. *See* Attorney General Opinion 95-08, at pp. 4–5, 7 (1995).

benefits to be paid after the effective date of the new law. *Heddon v. North Dakota Workmen's Compensation Bureau*, 189 N.W.2d 634 (N.D.1971), involved a Bureau attempt to apply a legislative amendment requiring workers compensation benefits be used to defray nursing home costs of a claimant to a person who had previously had her claim determined. The Court ruled in favor of the injured worker because there was no express declaration the statute was intended to be applied retroactively, and if it had been applied retroactively, it would have impermissibly reduced the worker's ongoing benefits. *Heddon*, 189 N.W.2d at 637–38. Here, N.D.C.C. § 65–05–12.2 was clearly intended to apply to all PPI determinations after its effective date, "irrespective of injury date," 1995 N.D. Sess. Laws ch. 624, § 3, and the Bureau is not attempting to reduce Saari's ongoing benefits. The thread connecting *Gregory II, Jensen* and *Heddon* is the Bureau was not permitted to retroactively apply new legislation to discontinue or reduce benefits the claimants had been receiving, or already had a vested right in receiving. These cases do not support Saari's argument claimants are automatically entitled to the highest benefit available, regardless of the circumstances.

[¶ 18] Saari also contends the Legislature overruled *Gregory I* by enacting N.D.C.C. § 65–05–12.2(2), which provides:

If a compensable injury that occurs after July 31, 1995, causes permanent impairment, the bureau shall calculate the amount of the lump sum payable under subsection 1 by multiplying thirty-three and one-third percent of the average weekly wage in this state rounded to the next highest dollar on the date of the original injury, by the number of weeks specified in subsection 15. The bureau shall pay permanent impairment benefits under subsection 1 at the rate of one

hundred twenty-two dollars per week for a compensable injury that occurred before August 1, 1995.

Saari argues by enacting this statute the Legislature expressed its intention to return to the general rule that the date of injury governs workers compensation benefits, including PPI awards. However, subsection 2 speaks only to how the lump sum benefit is calculated and it clearly does not apply a rate effective at the time of injury to persons who, like Saari, were injured before the enactment of the statute. The Legislature made clear N.D.C.C. § 65–05–12.2 applies to all PPI awards determined after its effective date, "irrespective of injury date." 1995 N.D. Sess. Laws ch. 624, § 3. Subsection 2, when considered with the language in the effective date part of the law, does not evince any legislative intention to reinstate the "date of injury" rule to determine an injured worker's PPI award.

▮ [¶ 19] Saari also argues his right to PPI benefits is contractual in nature, and the Legislature is forbidden from impairing an obligation of contract. *See* N.D. Const. Art. I, § 18 ("[n]o .·. law impairing the obligations of contracts shall ever be passed"). In *Effertz v. North Dakota Workers' Compensation Bureau,* 481 N.W.2d 223, 224–25 (N.D.1992), this Court held all rights and obligations under the Act are wholly statutory, not contractual, in nature:

> Our research indicates that entitlement to workers' compensation benefits is not grounded in contract and does not impose a contractual obligation upon a state workers' compensation agency or fund. *Price v. All American Engineering Co.,* 320 A.2d 336 (Del.1974); *Department of Labor & Employment Security, Division of Workers' Compensation v. Vaughan,* 411 So.2d 294 (Fla.App.1982). A workers' compensation award "is not a debt or judgment, or liability arising out of contract express or implied. (Citation omitted.) It is an obligation imposed by law and

arises out of the status or relationship existing between employer and employee." *Bowen v. Hockley,* 71 F.2d 781, 782 (4th Cir.1934); *see also Gaudet v. Exxon Corp.,* 562 F.2d 351 (5th Cir. 1977). The North Dakota Workers' Compensation Act is an exercise of the police power of the legislature. *State v. Hagan,* 44 N.D. 306, 175 N.W. 372 (N.D.1919).

Saari's argument the later cases of *Jensen* and *Thompson,* by merely stating the general rule in a workers compensation context that statutory amendments may not operate retrospectively to abrogate contractual or vested rights, have undercut the holding in *Effertz* is not persuasive. There has been no impairment of any contract rights in this case.

[¶ 20] Saari also claims the Bureau's interpretation of N.D.C.C. § 65–05–12.2 has been "inconsistent and confusing," and we should give no deference to it under the standard of review where we defer to the practical construction and interpretation of a statute by the administrative agency administering the law if that interpretation does not contradict clear statutory language. *See, e.g., Hamich, Inc. v. State By and Through Clayburgh,* 1997 ND 110, ¶ 13, 564 N.W.2d 640. The Bureau responds any inconsistency that occurred was caused by referral of the legislation and uncertainty over what the status of the law would be if the referral vote either passed or failed. Under the circumstances, resort to the deferential standard of review is not necessary to uphold the Bureau's decision in this case.

[¶ 21] We conclude the Bureau properly determined Saari's claim for PPI benefits is governed by the provisions of N.D.C.C. § 65–05–12.2, rather than former N.D.C.C. §§ 65–05–12 and 13.

C

▮ [¶ 22] Saari contends the Bureau should have used the Third Edition of the AMA Guides, rather than the Fourth Edition of the AMA Guides, in determining his

PPI. Under the circumstances, we disagree.

[¶ 23] The new PPI law, which became effective on July 10, 1996, provides in part:

Unless otherwise provided by this section, a doctor evaluating the impairment of an injured employee shall use the edition of the American medical association's "Guides to the Evaluation of Permanent Impairment" in effect on the date of the employee's evaluation to establish a rating for impairment of function.

N.D.C.C. § 65–05–12.2(6). In *McCabe*, 1997 ND 145, ¶ 16, 567 N.W.2d 201, this Court, in order to avoid a constitutional conflict, construed former N.D.C.C. § 65–05–12 and N.D.C.C. § 65–01–02(26), as adopting the "most recent" and "most current" edition of the AMA Guides in effect at the time of those statutory enactments. *See also Feist,* 1997 ND 177, ¶ 13, 569 N.W.2d 1; *Coleman v. North Dakota Workers Compensation Bureau,* 1997 ND 168, ¶ 5, 567 N.W.2d 853; *McCollum v. North Dakota Workers Compensation Bureau,* 1997 ND 163, ¶ 8, 567 N.W.2d 811. In this case, the Fourth Edition of the AMA Guides was published in June 1993, was the most recent edition of the AMA Guides when N.D.C.C. § 65–05–12.2 became effective on July 10, 1996, and was in effect on the date of Saari's December 1997 evaluation. Under *McCabe* and its progeny, we conclude the Bureau did not err in determining Saari's PPI under the Fourth Edition of the AMA Guides.[4] Saari has not argued that the language used in N.D.C.C. § 65–05–12.2(6) constitutes an unconstitutional delegation of power by the Legislature to the American Medical Association, so we do not address the question.

## III

[¶ 24] The judgment is reversed.

[¶ 25] GERALD W. VANDE WALLE, C.J., and DALE V. SANDSTROM and WILLIAM A. NEUMANN, JJ., concur.

MARING, Justice, dissenting.

[¶ 26] The majority opinion relies on *Gregory v. North Dakota Workmen's Compensation Bureau,* 369 N.W.2d 119 (N.D. 1985), in holding a claimant's right to PPI benefits does not vest until there has been an actual determination that an impairment is permanent and the percentage thereof. Because there have been substantive changes to N.D.C.C. § 65–05–12 since the *Gregory I* decision, and the fact that the date on which the majority concludes the right to PPI benefits vests does not necessarily relate to the date an injury becomes permanent, I believe the majority's reliance on *Gregory I* is misplaced. I, therefore, respectfully dissent.

[¶ 27] The version of N.D.C.C. § 65–05–12 at issue in *Gregory I* provided in part: "If the injury causes permanent impairment ... the percentage which such impairment bears to total impairment shall be determined, and the fund shall pay to the impaired employee [the scheduled] weekly compensation...." *See* N.D.C.C.

---

4. In 1999, the Legislature enacted House Bill 1422 which amended N.D.C.C. § 65–01–02(26) to delete any reference to the AMA Guides and amended N.D.C.C. § 65–05–12.2(6) to read:

A doctor evaluating permanent impairment shall include a clinical report in sufficient detail to support the percentage ratings assigned. The bureau shall adopt administrative rules governing the evaluation of permanent impairment. These rules must incorporate principles and practices of the American medical association's "Guides to the Evaluation of Permanent Impairment" modified to be consistent with North Dakota law, to resolve issues of practice and interpretation, and to address areas not sufficiently covered by the guides. Until rules adopted under this subsection become effective, impairments must be evaluated under the fourth edition, third printing, of the guides.

1999 N.D. Sess. Laws ch. 551, §§ 1 and 2. These amendments "apply to all impairment evaluations performed after July 31, 1999, regardless of the date of injury or date of claim filing." 1999 N.D. Sess. Laws ch. 551, § 4.

§ 65–05–12 (1977). That version of the statute required the Bureau to pay compensation *at the time* the injury was determined to be a permanent impairment. The sole issue in *Gregory I* was "whether the rate of payment for a permanent partial impairment award under § 65–05–12, N.D.C.C., is the statutory rate in effect at the time the impairment is determined or the statutory rate in effect on the date the compensable injury occurred." 369 N.W.2d at 121. The *Gregory I* Court reasoned *the time* or *the date* of determination that the injury caused a permanent impairment controls the rate of payment and when the right to compensation arises. *See id.* ("the Bureau is required to pay compensation only when an *impairment determination* is made . . . [and that date] controls when the right to compensation arises and the amount of payment") (emphasis added).

[¶ 28] The process of "impairment determination" has changed, however, since *Gregory I* was decided. At that time, N.D.C.C. § 65–05–12 did not require a determination of "maximum medical improvement" in the process of establishing entitlement to PPI benefits. In 1989 the Legislature introduced the concept of "maximum medical improvement" which, under the statute applicable to Saari, is defined as "the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated based upon reasonable medical probability." N.D.C.C. § 65–01–02(11) (1995). The definition of "permanent impairment" also incorporates the concept of "maximum medical improvement": "the loss of or loss of use of a member of the body existing after *the date of maximum medical improvement* or recovery . . . ." N.D.C.C. § 65–01–02(26) (1995) (emphasis added). The Legislature made it clear that an injured employee is not eligible for PPI benefits until the date "maximum medical improvement" is determined. *See* N.D.C.C. § 65–05–12.2(5) (1995) (requiring the claimant's physician to report to the Bureau the date the employee has reached "maximum medical improvement" and any evidence of impairment of function after that date). The majority fails to acknowledge the effect subsequent changes to N.D.C.C. § 65–05–12 had on the *Gregory I* decision.

[¶ 29] *Gregory I* concluded, for purposes of PPI benefits, "the *date of determination of [permanent] impairment* controls." 369 N.W.2d at 121 (emphasis added). At the time *Gregory I* was decided, the Bureau did not require the preliminary determination of "maximum medical improvement" before a claimant could be eligible for PPI benefits. In 1989, the Legislature added this prerequisite to "clarify that no award for impairment will be made until the attending physician reports that the claimant has reached maximum medical improvement unless that worker has a total loss." *See Hearing on S.B. 2266 Before Senate Judiciary Committee* (1989) (testimony of Pat Mayer, Bureau Claims Manager). Requiring an initial determination of "maximum medical improvement" "was necessary to clarify at which point a claim is to be evaluated for permanent impairment . . . the intent is to clarify that awards for impairment are made only after the injured worker has reached the point of maximum medical improvement . . . [so as to avoid] doctors giving impairment recommendations before the claimant has truly recovered." *Id.* In my opinion, the *Gregory I* Court's definition of "date of determination of impairment" is consistent with the point at which "maximum medical improvement" is reached. All that remains after that determination is a physician's confirmation there is permanency and an evaluation of the percentage of permanent loss.

[¶ 30] Because N.D.C.C. § 65–05–12 provides benefits only for a permanent loss of use, it is the "permanency" of the injury which is the focus of the statute. The date which should govern when a claimant's right to PPI benefits vests is the date on which the injury manifests itself as perma-

nent, not some arbitrary date when a physician confirms the injury's permanency and determines the permanency percentage. The proper analysis, therefore, as to when the right to PPI benefits vests is the determination of when the impairment in fact became permanent. This will be when "maximum medical improvement" has been reached, "the date after which further recovery from, or lasting improvement to, an injury or disease can no longer reasonably be anticipated based upon reasonable medical probability." N.D.C.C. § 65–01–02(11) (1995). The *Gregory I* Court acknowledged the impairment can become permanent on the date of injury or can become permanent at a later date. 369 N.W.2d at 121; *cf. Petition of Lapinski*, 126 N.H. 772, 777–78, 497 A.2d 841 (N.H.1985) ("the right to compensation for permanent loss accrues at the time the loss occurs, not at the time of the final medical determination of the full extent of the loss ... permanent loss may occur either at the time of the injury or when sound medical opinion takes the position that further medical treatment will be of no avail").

[¶ 31] The majority reasons the point at which "maximum medical improvement" is reached is merely a preliminary step before permanency is actually determined. While the statute now requires this two-step process to establish PPI benefits, the fact a claimant is required to have a subsequent determination that the injury is indeed permanent and the percentage of total body loss, does not change the medical fact that once a permanent impairment is confirmed, the date of permanency necessarily relates back to the date "maximum medical improvement" was reached. When an injury reaches "maximum medical improvement" no medical or surgical intervention will restore use to the bodily member.

[¶ 32] To do otherwise invites chaos as claimants and the Bureau attempt to control the applicable statute by manipulating the date of permanency evaluation, an evaluation which merely confirms the permanency and measures the extent of permanent impairment. In addition, the availability of medical professionals to conduct the permanency evaluations should not control the applicable rate of compensation. A claimant's right to compensation for permanent impairment loss vests when the loss occurs, not at a later date when the percentage of permanency is evaluated.

[¶ 33] In the present case, the permanent loss occurred at the time it was determined Saari's impairment reached maximum medical improvement—when further medical treatment to Saari's cervical spine and shoulder was of no avail. This determination was made by Dr. Greves of Lake Region Clinic. On August 13, 1997, the Bureau wrote to Dr. Greves inquiring as to whether Saari had attained maximum medical improvement, what date maximum medical improvement was reached and whether Saari had sustained a permanent impairment of at least 16 percent whole body as a result of his work injury. Dr. Greves determined Saari had reached maximum medical improvement on June 4, 1987, and that he had at least 16 percent whole body impairment. Dr. Greves noted in his response to the Bureau there was "no significant improvement since injury." While the parties stipulated that Saari reached maximum medical improvement at least prior to July 10, 1996, the evidence in the record shows the permanency manifested on the date of injury.

[¶ 34] Having reached maximum medical improvement on or close to the date of injury, June 4, 1987, and having sustained a permanent partial impairment at that time, I conclude the statutes governing the rate of compensation on June 4, 1987, control the amount of Saari's permanent partial impairment award.

[¶ 35] I believe this interpretation of the applicable workers compensation statutes effectuates the purpose of incorporating the concept of "date of maximum medical improvement" into the determination of

permanent impairment awards and is consistent with *Gregory I*, 369 N.W.2d at 119. In *Gregory I*, our Court, while narrowly focused on choosing between date of injury versus "date of determination," clearly recognized permanency can manifest on the date of injury or at a later date. 369 N.W.2d at 121–22 ("[the] retroactivity argument is premised on the faulty assumption that the impairment always takes place on the date of injury despite the fact that it sometimes does not become a permanent impairment until a later date").

[¶ 36] To the extent my dissent is inconsistent with *Effertz v. North Dakota Workers' Compensation Bureau*, 481 N.W.2d 218 (1992), I disagree with our determination therein and would overrule the decision.

[¶ 37] I would affirm the judgment of the district court and remand to the Bureau to calculate Saari's award based on the rate of compensation for a permanent partial impairment on June 4, 1987.

[¶ 38] Mary Muehlen Maring