2000 ND 135

**Brian TANGEN, Claimant, Appellee and Cross–Appellant,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant and Cross–Appellee,**

and

**National Sun Industries, Inc., Respondent.**

No. 20000026.

Supreme Court of North Dakota.

June 29, 2000.

Mark G. Schneider, Schneider, Schneider & Phillips, Fargo, ND, for claimant, appellee and cross-appellant.

Sara Gullickson McGrane, Felhaber Larson Fenlon Vogt, Minneapolis, MN, for appellant and cross-appellee.

NEUMANN, Justice.

[¶ 1] The North Dakota Workers Compensation Bureau appeals from a judgment reversing the Bureau's order denying further disability benefits to Brian Tangen. We reverse and remand for further proceedings.

I

[¶ 2] Tangen suffered a work-related injury to his right knee in August 1992 while employed at National Sun Industries in Enderlin, North Dakota. The Bureau accepted Tangen's claim and paid benefits for the injury. In March 1994 Tangen moved to Thief River Falls, Minnesota, where he began working at Arctco.

[¶ 3] In December 1994 Tangen underwent knee surgery necessitated by the prior work injury. In a February 27, 1995, letter addressed "To Whom It May Concern," Dr. Mark Lundeen released Tangen to return to work:

Brian Tangen is a patient that I have recently had the opportunity to re-evaluate and I think at this point he is able to return to work. I would not want him

doing any kneeling or squatting or twisting activities with heavy loads. I think as far as kneeling and squatting is concerned that should be avoided even without loads.

I'm also a little bit concerned about him lifting loads above shoulder level until this situation completely resolves.

[¶ 4] In a letter to the Bureau dated April 17, 1995, Dr. Lundeen stated he was not changing Tangen's work restrictions, but suggested if a position such as forklift operator were open Tangen should be given special consideration. Tangen was subsequently transferred to a position as a forklift operator at Arctco. On May 19, 1995, the Bureau issued an order awarding Tangen partial disability benefits.

[¶ 5] On June 7, 1996, Tangen voluntarily quit his job at Arctco for reasons unrelated to his knee injury. He worked briefly at a couple of other jobs, and in January 1997 began working at Sheldon's Auto Parts, where he dismantled cars. In June 1997 Tangen had some fluid on his knee, and Dr. Lundeen recommended medication and rest for one week. Tangen filed a reapplication for benefits, and received disability benefits for the short period he was off work. In August 1997, Tangen was reexamined by Dr. Lundeen. On August 12, 1997, Dr. Lundeen wrote to the Bureau explaining Tangen's knee had worsened and taking Tangen off work at Sheldon's:

Brian over time has developed increasing problems which I think are directly related to a breakdown in the cartilage surface between the kneecap and the groove in which it rides, and although we have tried to modify his lifestyle and activities at work, it simply is no longer appropriate for him to continue to do activities which require prolonged standing, prolonged sitting, kneeling squatting, climbing ladders or stairs. I also think that it is inappropriate for him to be carrying loads of any more than 40 to 50 pounds for very short periods of time. These limitations are particularly designed to preserve the function of his patellofemoral joint, but as I discussed this with Brian, I think the limitations I am imposing preclude his returning to work at Sheldon's.

[¶ 6] Tangen reapplied for disability benefits on August 18, 1997. The Bureau accepted the reapplication and began paying benefits. On February 18, 1998, the Bureau issued a Notice of Intent to Discontinue Benefits. On February 27, 1998, the Bureau issued an order finding that benefits awarded on Tangen's reapplications were paid in error and terminating any further disability benefits.

[¶ 7] Tangen requested a rehearing, and an evidentiary hearing was held on February 3, 1999. The administrative law judge ("ALJ") issued recommended findings of fact, conclusions of law, and order on March 11, 1999. The ALJ found Tangen had failed to show a significant change in his compensable medical condition, had failed to show actual wage loss, and had voluntarily withdrawn from the job market. The Bureau adopted the ALJ's recommendations in a March 22, 1999, order denying Tangen further benefits.

[¶ 8] Tangen appealed to district court. The district court reversed and remanded for an award of benefits. The Bureau has appealed to this Court.[1]

## II

[¶ 9] In an appeal from a judgment involving the decision of an administrative agency, we review the decision of the agency, not the decision of the district

---

1. Tangen has filed a cross-appeal, arguing the district court erred in applying the 1995 enactment of N.D.C.C. § 65–05–28(5) to his claim. Tangen's cross-appeal was unnecessary. When the judgment below provides all of the relief sought by the appellee, he may attempt to save the judgment by urging any ground asserted in the trial court without cross-appealing. *E.g., Stewart v. North Dakota Workers Comp. Bureau*, 1999 ND 174, ¶ 37, 599 N.W.2d 280.

court, and our review is limited to the record before the agency. *Stewart v. North Dakota Workers Comp. Bureau*, 1999 ND 174, ¶ 7, 599 N.W.2d 280. Under N.D.C.C. §§ 28–32–19 and 28–32–21, we affirm the agency's decision unless its findings of fact are not supported by a preponderance of the evidence, its conclusions of law are not supported by its findings of fact, its decision is not supported by its conclusions of law, its decision is not in accordance with the law or violates the claimant's constitutional rights, or the agency's rules or procedures deprived the claimant of a fair hearing. *Stewart*, at ¶ 7. The interpretation of a statute is a question of law, which is fully reviewable by this Court. *Wanstrom v. North Dakota Workers Comp. Bureau*, 2000 ND 17, ¶ 5, 604 N.W.2d 860.

### III

[¶ 10] A claimant seeking additional disability benefits for aggravation of a prior work-related injury must follow the reapplication procedure outlined in N.D.C.C. § 65–05–08(1):

When disability benefits are discontinued, the bureau may not begin payment again unless the injured employee files a reapplication for disability benefits on a form supplied by the bureau. In case of reapplication, the award may commence no more than thirty days before the date of reapplication. Disability benefits must be reinstated upon proof by the injured employee that:

a. The employee has sustained a significant change in the compensable medical condition;

b. The employee has sustained an actual wage loss caused by the significant change in the compensable medical condition; and

c. The employee has not retired or voluntarily withdrawn from the job market as defined in section 65–05–09.3.

The Bureau asserts Tangen performed activities beyond his work restrictions while employed at Sheldon's, and is therefore barred from seeking further disability benefits by N.D.C.C. § 65–05–28(5):

If an employee undertakes activities, whether or not in the course of employment, which exceed the treatment recommendations of the employee's doctor regarding the work injury, and the doctor determines that the employee's injury or condition has been aggravated or has worsened as a result of the employee's activities, the bureau may not pay benefits relative to the aggravation or worsening, unless the activities were undertaken at the demand of an employer.

### A

[¶ 11] We initially consider whether N.D.C.C. § 65–05–28(5) applies to Tangen's reapplication. The statute was enacted in 1995. *See* 1995 N.D. Sess. Laws ch. 625, § 1. Tangen argues the law in effect at the time of his original 1992 work injury governs his claim, and, because the law at that time did not preclude benefits if the claimant exceeded restrictions, he is entitled to aggravation benefits. The Bureau asserts the law in effect in 1997, when Tangen's work injury was aggravated and he reapplied for benefits, governs the reapplication, and N.D.C.C. § 65–05–28(5) therefore precludes payment of additional disability benefits to Tangen.

[¶ 12] We have often stated the general rule that, unless otherwise provided, the statutes in effect on the date of injury govern a claimant's right to collect workers compensation benefits. *See, e.g., Wanstrom*, 2000 ND 17, ¶ 7, 604 N.W.2d 860; *Saari v. North Dakota Workers Comp. Bureau*, 1999 ND 144, ¶ 10, 598 N.W.2d 174. The rule is an outgrowth of our statutory mandate that provisions of the Century Code are not retroactive unless "expressly declared to be so." N.D.C.C. § 1–02–10; *see Anderson v. North Dakota Workers Comp. Bureau*, 553 N.W.2d 496, 498 (N.D.1996).

[¶ 13] We have not previously addressed application of this rule to an aggravation claim where the original work injury occurred before the statutory change, but the aggravation of the prior injury and reapplication for benefits occurred after the new statute took effect. However, we find the situation in *Gregory v. North Dakota Workmen's Comp. Bureau*, 369 N.W.2d 119 (N.D.1985), to be closely analogous. In *Gregory*, the claimant was injured in 1958. He subsequently returned to work until 1981, when the cumulative effects of the 1958 injury forced him to quit. In 1983 he sought a permanent partial impairment award. The Bureau determined he had suffered a twenty percent whole body impairment, but awarded benefits at the rate in effect at the time of the original work injury in 1958, rather than the higher rate under the statutes in effect in 1983.

[¶ 14] On appeal, the Bureau argued the general rule that the statutes in effect on the date of injury controlled. We rejected the Bureau's arguments, holding the 1983 statutory rate applied:

> The Bureau argues strenuously that because § 65–05–12 does not specify a time for determining the permanent impairment benefit rate, calculating impairment awards by the rate in effect on the date of determination results in an impermissible retroactive application of the later statutory rate. This retroactivity argument is premised on the faulty assumption that the impairment always takes place on the date of injury despite the fact that it sometimes does not become a permanent impairment until a later date as in this case. Common sense, as well as the plain language of § 65–05–12, tells us that an impairment does not take place until it is manifest and determined to be permanent.

*Gregory*, 369 N.W.2d at 122; *see also Saari*, 1999 ND 144, ¶¶ 11–13, 598 N.W.2d 174.

[¶ 15] Similarly, we conclude common sense and a proper consideration of the statutory scheme mandate the conclusion the 1995 amendment applies to Tangen's reapplication for aggravation benefits. An injured worker does not have a right to claim aggravation benefits at the time of the original injury. Rather, by definition, the right to aggravation disability benefits does not arise unless disability benefits are discontinued and the claimant suffers a subsequent aggravation of the compensable medical condition. *See* N.D.C.C. § 65–05–08(1). Accordingly, the right to collect aggravation disability benefits does not arise at the time of the original work injury, but the claimant is entitled to such benefits only if subsequent contingencies occur.

[¶ 16] Under these circumstances, we hold N.D.C.C. § 65–05–28(5) applies to Tangen's reapplication for benefits.

B

[¶ 17] Having determined N.D.C.C. § 65–05–28(5) applies to Tangen's reapplication, we must next consider the appropriate interpretation of the statute under the facts in this case.

[¶ 18] Initially we must determine who bears the burden of proof. A claimant ordinarily bears the burden of demonstrating he is entitled to benefits. *See, e.g., Sprunk v. North Dakota Workers Comp. Bureau*, 1998 ND 93, ¶ 5, 576 N.W.2d 861. The employer and Bureau may, however, bear the burden of proof on certain issues. *See, e.g., Siewert v. North Dakota Workers Comp. Bureau*, 554 N.W.2d 465, 467 (N.D.1996) (the Bureau has the burden of proving an employee is barred from receiving benefits because the employee intentionally injured himself).

[¶ 19] When an injured claimant files a reapplication for disability benefits due to aggravation of a prior work injury, the claimant must show his medical condition has significantly changed, he has suffered an actual wage loss, and he has not retired or voluntarily withdrawn from the job market. N.D.C.C. § 65–05–08(1). If the

claimant meets that burden, the employer and Bureau may nevertheless seek to preclude benefits based upon the claimant's violation of work restrictions under N.D.C.C. § 65–05–28(5). If the employer and Bureau invoke that statute, however, the legislative history demonstrates an intent to place the burden upon the employer and Bureau to show the employee performed activities beyond his restrictions. In committee testimony, the Bureau's representative twice explained the employer, and not the employee, bears the burden of proof under the statute. *See Hearing on S.B. 2501 Before the Senate Industry, Business and Labor Committee,* 54th N.D. Legis. Sess. (Jan. 31, 1995) (testimony of Julie Leer, Workers Compensation Bureau attorney) [*"Hearing on S.B. 2501"*]. We conclude the Bureau has the burden of proving Tangen is precluded from receiving benefits under N.D.C.C. § 65–05–28(5).

### C

[¶ 20] The Bureau asserts Tangen is precluded from receiving benefits because he performed activities which were beyond his physical restrictions while working at Sheldon's. The Bureau points to "restrictions" outlined by Dr. Lundeen in medical records and letters to the Bureau to support its assertion Tangen's activities were beyond his restrictions. The Bureau argues this is sufficient to preclude benefits under N.D.C.C. § 65–05–28(5).

[¶ 21] By its terms, N.D.C.C. § 65–05–28(5) precludes payment of benefits if the employee aggravates his injury by undertaking activities "which exceed the treatment recommendations of the employee's doctor regarding the work injury." The phrase "treatment recommendations" clearly suggests it encompasses only those restrictions which are communicated to the employee. In order for the statute to make sense, there must be a showing the employee knew of the "treatment recommendations" and intentionally engaged in activities which exceeded those recommendations.

[¶ 22] This interpretation is supported by the legislative history of N.D.C.C. § 65–05–28(5). In written testimony in support of the 1995 enactment, the Bureau's attorney explained the primary intent of the bill was to encourage the employee and employer to follow the medical advice of the treating physician:

> This bill precludes the bureau from paying benefits in relation to an aggravation or worsening of a work injury if the aggravation or worsening is determined to be the result of an injured worker's failure to follow medical advice and refrain from activities determined by the doctor to be inappropriate for the worker. . . .

> This bill will assist in effectively directing the medical treatment and rehabilitation of an injured worker by requiring an injured worker and any employer of the worker to heed the medical advice of the doctor treating the worker. The injured worker should be held accountable for undertaking activities which lie beyond the physical restrictions outlined by the worker's doctor. Physical restrictions are imposed on a person after an injury to facilitate healing of the injury. Recovery after the injury will not be complete if medical advice is not followed.

*Hearing on S.B. 2501, supra,* (written testimony of Julie Leer, Workers Compensation Bureau attorney). This history clearly articulates the injured worker is to "follow" and "heed" the advice and restrictions "outlined" by the doctor. An injured worker can only be expected to "follow" and "heed" medical recommendations which are actually communicated to him, and should only be penalized for intentional disregard of those recommendations.

[¶ 23] Any other interpretation of N.D.C.C. § 65–05–28(5) would violate the no-fault nature of the Workers Compensation Act, and seriously erode the "sure and certain relief" which lies at the heart of the

workers compensation system. *See* N.D.C.C. § 65–01–01 ("sure and certain relief is hereby provided regardless of questions of fault"); *Basin Electric Power Cooperative v. North Dakota Workers Comp. Bureau*, 541 N.W.2d 685, 689 (N.D. 1996). One of the express goals of the workers compensation system is to return disabled employees to substantial gainful employment as soon as possible after an injury. *See* N.D.C.C. § 65–05.1–01(3); *Hoffman v. North Dakota Workers Comp. Bureau*, 1999 ND 66, ¶ 8, 592 N.W.2d 533. Injured employees may well be leery of returning to work if ongoing disability benefits may be terminated if the worker unintentionally exceeds restrictions. Holding an injured worker could be denied benefits for inadvertently exceeding work restrictions or for exceeding work restrictions of which he is unaware would move the workers compensation system toward the harsh, outmoded contributory negligence era of days gone by. We decline to do so. We hold that, in order to deny benefits under N.D.C.C. § 65–05–28(5), the Bureau must prove the claimant had knowledge of specific physical restrictions, and intentionally undertook· activities which exceeded those restrictions.

[¶ 24] In this case, neither the ALJ nor the Bureau made a finding that Tangen intentionally exceeded known restrictions. The only relevant finding stated:

> In January 1997, Tangen started working for Sheldon's Auto Parts dismantling automobiles. At Sheldon's Auto Parts, even though there were tools and machines available to assist in the dismantling, Tangen had to, on occasion, lift and jockey heavy items onto shelves. Some of the tasks Tangen performed were beyond his physical restrictions.

[¶ 25] The record in this case is sketchy, at best, about what specific restrictions had been communicated to Tangen. Statements in medical records and letters to the Bureau do not, standing alone, establish knowledge by Tangen. Furthermore, some of the "restrictions" relied upon by the Bureau were general, equivocal statements by Dr. Lundeen which did not include specific restrictions upon Tangen's activities. The Bureau's findings do not support application of N.D .C.C. § 65–05–28(5) to preclude further benefits to Tangen.

## IV

[¶ 26] The Bureau argues, notwithstanding application of N.D.C.C. § 65–05–28(5), the order denying further benefits may be upheld on alterative grounds. The Bureau found Tangen failed to show a significant change in his medical condition, failed to show actual wage loss attributable to his medical condition, and voluntarily withdrew from the job market. The Bureau's arguments on these issues are, to a great extent, intertwined with its assertion Tangen wrongfully accepted work at Sheldon's which was beyond his work restrictions.

[¶ 27] For example, the Bureau argues that, when Tangen left suitable employment at Arctco and accepted employment at Sheldon's which allegedly was beyond his physical restrictions, he thereby voluntarily withdrew from the job market and any wage loss he suffered was due to such withdrawal, and not to the worsening of his work injury. Similarly, the Bureau's argument that Tangen failed to show a significant change in his medical condition is based largely upon its conclusion that Tangen's work restrictions remained the same throughout the entire time period. The Bureau reached this conclusion by considering statements in medical records and letters to the Bureau of which Tangen may have been unaware. The Bureau relied upon those records as evidence Tangen's condition had not worsened, yet inexplicably ignored a letter from Dr. Lundeen expressly stating there was "clinical evidence of increasing chondral breakdown."

[¶ 28] We have reviewed these issues and find they are without merit and do not

provide an alternative basis to uphold the Bureau's order.

## V

[¶ 29] We conclude the Bureau's findings do not support denial of further benefits to Tangen based upon application of N.D.C.C. § 65–05–28(5). We recognize, however, our interpretation of the statute presented an issue not previously addressed by this Court. Therefore, rather than directing payment of benefits, as the district court did, we reverse and remand with directions to remand to the Bureau for further proceedings consistent with this opinion. The Bureau may reopen the hearing to take additional evidence if deemed appropriate. Costs on appeal are awarded to Tangen.

[¶ 30] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.