2001 ND 173

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Rodney Lee LYNCH, Defendant and Appellant.**

**No. 20010037.**

Supreme Court of North Dakota.

Nov. 2, 2001.

Thomas K. Schoppert of Schoppert Law Firm, Northland Professional Bldg., Minot, ND, for defendant and appellant.

Rozanna C. Larson, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

NEUMANN, Justice.

[¶ 1]   Rodney L. Lynch appealed from the trial court's judgment of conviction entered upon a jury verdict finding him guilty of driving under the influence. We reverse and remand for a new trial.

[¶ 2]   On June 13, 2000, Rodney Lynch was stopped in his vehicle by Highway Patrol Officer Joseph Brian Knight. Knight observed Lynch had been drinking and conducted field sobriety tests. Knight arrested Lynch and transported him to UniMed Hospital in Minot for a blood test.

[¶ 3]   At UniMed, Knight and Lynch were met by Debra Swearson, a medical lab technician. Swearson had a blood kit with her. Knight broke the seal of the blood kit and testified to the contents. Swearson drew a blood sample from Lynch and completed Form 104, indicating the steps outlined by the state toxicologist had been followed and also indicating she was a medical lab technician. Knight then sent the sample to the state toxicologist for analysis.

[¶ 4]   At Lynch's trial, the State offered the blood test results into evidence. Lynch objected based on lack of foundation, asserting only "[n]on-compliance of 39–20–02." The trial court overruled the objection. The jury found Lynch guilty of driving under the influence. Lynch appealed.

[¶ 5]   Lynch argues the trial court erred, as a matter of law, in admitting the blood test results into evidence without proper foundation. The primary issue in this case is whether the 1999 amendment to N.D.C.C. § 39–20–02 creates an additional statutory foundation requirement for the admission of blood tests.

[¶ 6]   Lynch claims N.D.C.C. § 39–20–02 adds an additional requirement that the State must produce the state toxicologist's list of approved designations at

trial in order to establish the proper foundation for admission of the blood test results. Because the State failed to introduce the list at trial showing Swearson was medically qualified to draw blood, Lynch asserts the proper foundation was not met and the blood test results should not have been admitted. We agree.

[¶ 7] Interpretation of a statute is a question of law fully reviewable by this Court. *State v. Schlotman,* 1998 ND 39, ¶ 10, 575 N.W.2d 208. When interpreting a statute to determine its intent, we must look at the language itself and give it its plain, ordinary, and commonly understood meaning. *State v. Shafer-Imhoff,* 2001 ND 146, ¶ 49, 632 N.W.2d 825. When the meaning of the statute is clear on its face, there is no room for construction. *Erdmann v. Rants,* 442 N.W.2d 441, 443 (N.D. 1989).

[¶ 8] Before 1999, N.D.C.C. § 39–20–02 stated, in part, "Only a physician, or a qualified technician, chemist, or registered nurse acting at the request of a law enforcement officer may withdraw blood for the purpose of determining the alcohol, drug, or combination thereof, content therein." In 1999, the Legislative Assembly passed S.B. 2345, which amended N.D.C.C. § 39–20–02 to provide:

> Only an individual medically qualified to draw blood, acting at the request of a law enforcement officer, may withdraw blood for the purpose of determining the alcohol, drug, or combination thereof, content therein. The state toxicologist shall determine the qualifications or credentials for being medically qualified to draw blood, and shall issue a list of approved designations including medical doctor and registered nurse.

1999 N.D. Sess. Laws ch. 358.

[¶ 9] As originally introduced, S.B. 2345 provided, "[o]nly an individual medically qualified to draw blood, including a physician, qualified technician, chemist, or registered nurse" may withdraw blood. However, that provision was amended before passage. The legislature's removal of qualified technician from the statute means technicians are no longer statutorily qualified to draw blood. Section 39–20–02 is clear and unambiguous on its face and demonstrates the statute requires the state toxicologist to issue a list of approved designations medically qualified to draw blood.

[¶ 10] The State argues N.D.C.C. § 39–20–07 governs the admissibility of blood test results, not N.D.C.C. § 39–20–02. While we agree N.D.C.C. § 39–20–07 governs the admissibility of blood test results, the State must show the individual who drew the blood is medically qualified under N.D.C.C. § 39–20–02.

[¶ 11] In addition to amending N.D.C.C. § 39–20–02, S.B. 2345 also amended N.D.C.C. § 39–20–07(10). *See* 1999 N.D. Sess. Laws ch. 358, § 8. Before the 1999 amendment, subsection 10 stated, "[a] signed statement from the nurse or medical technician drawing the blood sample for testing as set forth in subsection 5 is prima facie evidence that the blood sample was properly drawn and no further foundation for the admission of such evidence may be required." 1999 N.D. Sess. Laws ch. 358. The 1999 amendment removed "nurse or medical technician" and inserted "individual medically qualified." *Id.* A medical technician's signature on Form 104 is no longer prima facie evidence that the sample was properly drawn.

[¶ 12] The results of a blood-alcohol test must be admitted into evidence in an alcohol-related proceeding if the test was fairly administered according to the state toxicologist's approved procedures. *State v. Asbridge,* 555 N.W.2d 571, 573 (N.D.1996). The State has the burden to

prove the blood test was collected following the proper procedures set forth by the state toxicologist. *See* N.D.C.C. § 39–20–07(5). In *State v. Jordheim,* 508 N.W.2d 878, 882 (N.D.1993), we stated:

> If the documentary evidence and the testimony of the participants in administering the test do not show scrupulous compliance with the methods approved by the State Toxicologist, the statutory mode of authentication cannot be used. In that case, the general rule of NDREv 901(a) applies and, a majority of this court holds, "the State must establish that there were sufficient indicia of reliability in the collection and submission of the blood sample" through expert testimony that establishes fair administration of the test. *State v. Schwalk,* 430 N.W.2d [317, 324 (N.D.1988) ]; *State v. Nygaard,* 426 N.W.2d 547, 549 (N.D. 1988).

[¶ 13]   The list of designations to draw blood approved by the state toxicologist under N.D.C.C. § 39–20–02 is governed by N.D.C.C. § 39–20–07(5) and should be routinely admitted under N.D.C.C. § 39–20–07(7). In the present case, no evidence was presented indicating Swearson was qualified to draw blood. The State introduced the blood test results through Knight. The State failed to introduce any evidence from the state toxicologist indicating Swearson was medically qualified to draw the blood sample. Because the State failed to show the blood sample was properly obtained, the blood test results should not have been received as evidence. *See State v. Barnick,* 477 N.W.2d 200, 202 (N.D.1991) (*citing* N.D.C.C. § 39–20–07(5) and (10)).

[¶ 14]   The trial court erred by admitting the blood-test results into evidence without proper foundation, therefore, the judgment of conviction is reversed, and the matter is remanded for a new trial.

[¶ 15] GERALD W. VANDE VALLE, C.J., and MARY MUEHLEN MARING, CAROL RONNING KAPSNER, DALE V. SANDSTROM, JJ., concur.