2004 ND 184

Esther BAITY, Claimant
and Appellant,

v.

WORKFORCE SAFETY AND
INSURANCE, Appellee,

and

Case New Holland, (f/k/a Case
IH/Steiger Tractor),
Respondent.

No. 20040096.

Supreme Court of North Dakota.

Oct. 12, 2004.

Rehearing Denied Nov. 2, 2004.

Mark G. Schneider (submitted on briefs), Schneider, Schneider & Phillips, Fargo, ND, for claimant and appellant.

Jacqueline Sue Anderson (submitted on briefs), Special Assistant Attorney General, Fargo, ND, for appellee.

NEUMANN, Justice.

[¶ 1] Esther Baity appealed from a district court judgment affirming an order of Workforce Safety and Insurance ("WSI") declaring her to be permanently and totally disabled and deciding the date when her supplementary benefits begin under N.D.C.C. § 65-05.2-01. We affirm, concluding WSI correctly determined Baity

was eligible for supplementary benefits beginning September 11, 2002, the date its cyclic review committee declared Baity permanently and totally disabled, rather than beginning July 1, 2001, the date Baity claimed evidence established she was permanently and totally disabled.

I

[¶ 2] On December 12, 1990, Baity filed a claim for workers compensation benefits relating to an injury to her lower back suffered on November 6, 1990, while she was employed by Case IH in Fargo. At that time, Baity was 44 years old. WSI accepted liability and paid associated medical and disability benefits. Baity began receiving temporary total disability benefits on December 4, 1990. In June 1995, a claims analyst completed a cyclic benefit review form, noting Baity had been released to work three to four hours per day at a sedentary level with restrictions, but that Baity had no motivation to return to work. The analyst recommended cyclic benefits. In September 1998, a claims analyst completed another cyclic benefit review form and recommended continuation of cyclic temporary total disability benefits, noting the continuing restrictions on Baity's work release and that she was not a retraining candidate. Cyclic temporary total disability benefits were approved.

[¶ 3] During September 1998, WSI implemented a procedure for reviewing eligibility for supplementary benefits. A claims review committee was formed to review all claims where the injured worker may be eligible to receive supplementary benefits. The claims review committee was structured to review all claims where the claimant had received temporary total disability benefits for 10 or more consecutive years, to determine which injured workers were eligible to receive long-term disability benefits and which workers qualified for supplementary benefits, and to determine eligibility for supplementary benefits on the anniversary date of the claimant's injury. The committee intended to give highest priority to those claims where the injured worker's weekly compensation rate was less than 60 percent of the state's average weekly wage. *See* N.D.C.C. §§ 65–05–09 and 65–05.2–02. No cyclic, supplementary and catastrophic benefit claim review form was completed for Baity between 1998 and 2002, although the 10-year anniversary of her injury was November 2000.

[¶ 4] Claims analysts continued to monitor Baity's claim throughout the years as she periodically visited physicians and underwent functional capacity assessments ("FCA"), but her condition did not significantly change. On December 18, 2001, WSI asked Baity's physician whether she could undergo a strengthening program followed by a FCA and whether there was any medical evidence preventing her from participating in vocational planning. The physician approved the requests and Baity underwent a FCA in March 2002. The physician agreed with the results, which indicated that Baity could work 16 to 20 hours per week on a trial basis, doing light level work, and the hours could be increased as tolerated.

[¶ 5] On July 16, 2002, Baity requested supplementary disability benefits from WSI because she had received more than 10 years of continuous benefits. On July 18, 2002, Baity's claim was referred for review by WSI's internal cyclic review committee. On July 30, 2002, the cyclic review committee considered the claim and requested additional information regarding clarification of the March 2002 FCA and Baity's allowable work hours, which differed from previous assessments. After receiving the clarification, the committee met again and returned the claim to the

claims analyst for review of rehabilitation options. The claims analyst recommended permanent total disability status rather than rehabilitation. The committee met on September 11, 2002, and approved a declaration that Baity was permanently and totally disabled and was entitled to supplementary benefits beginning on that date.

[¶ 6] Baity requested reconsideration of WSI's order and sought supplementary benefits from July 1, 2001, the date she claimed she should have been placed on highest priority because her weekly benefit rate had fallen below 60 percent of the state's average weekly wage. Because WSI did not follow its own written procedures and did not approve her as permanently and totally disabled until more than a year later, Baity claimed she was entitled to supplementary benefits commencing July 1, 2001. After WSI rejected this argument, Baity requested a formal hearing. An administrative law judge ("ALJ") recommended that Baity be awarded supplementary benefits effective July 1, 2001, because on that date she had been receiving continuous benefits for more than 10 years and her weekly benefits fell below 60 percent of the state's average weekly wage. The ALJ also found July 1, 2001, was "the date that medical and vocational evidence concluded Baity was permanently and totally disabled," and the "finding that Baity is permanently [and] totally disabled as of September 11, 2002, is arbitrary and capricious since the September 11, 2002 date is unrelated to Baity's medical or vocational status and simply reflects the date the committee met and determined Baity's status." WSI rejected the ALJ's recommendation and ordered Baity was not entitled to supplementary benefits before September 11, 2002, the date the cyclical review committee declared her to be permanently and totally disabled. The

district court affirmed WSI's order, and this appeal followed.

## II

[¶ 7] Under N.D.C.C. § 28–32–46, the district court must affirm an order of an administrative agency unless it finds any of the following:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

[¶ 8] In *Zander v. Workforce Safety and Ins.*, 2003 ND 194, ¶ 6, 672 N.W.2d 668, we explained:

On appeal from the district court's judgment, this Court reviews the agency order in the same manner as the district court under N.D.C.C. § 28–32–46. N.D.C.C. § 28–32–49; *Grand Forks Prof'l Baseball, Inc. v. North Dakota Workers Comp. Bureau*, 2002 ND 204, ¶ 8, 654 N.W.2d 426. We review the

decision of the administrative agency, rather than that of the district court, although the district court's analysis is entitled to respect. *Paul v. North Dakota Workers Comp. Bureau*, 2002 ND 96, ¶ 6, 644 N.W.2d 884. Although the administrative construction of a statute by the agency administering the law is ordinarily entitled to some deference if that interpretation does not contradict clear and unambiguous statutory language, *Hamich, Inc. v. State*, 1997 ND 110, ¶ 13, 564 N.W.2d 640, questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision. *Grand Forks Prof'l Baseball*, at ¶ 8.

### A

[¶ 9] The major issue in this case is whether Baity is entitled to supplementary disability benefits beginning on September 11, 2002, the date WSI's cyclic review committee declared she was permanently and totally disabled, or beginning July 1, 2001, the date Baity claims evidence established she was permanently and totally disabled.

[¶ 10] Section 65–05.2–01, N.D.C.C., addresses eligibility for supplementary benefits:

> A workforce safety and insurance claimant who is receiving permanent total disability benefits, or death benefits, and who has been receiving disability or death benefits for a period of [ten] con-

secutive years is eligible for supplementary benefits. Eligibility for supplementary benefits lasts as long as the claimant is entitled to permanent total disability benefits or death benefits.[1]

[¶ 11] Section 65–05.2–02(1), N.D.C.C., which governs the amount of supplementary benefits allowable, also provides in part:

> A claimant whose weekly benefit rate is less than sixty percent of the state's average weekly wage, who is eligible for supplementary benefits and who is receiving permanent total disability benefits, or death benefits regardless of the date of death, is entitled to receive a weekly supplementary benefit that, when added to the weekly permanent total disability benefit or death benefit, equals the ratio of that claimant's weekly benefit to the state's average weekly wage on the date of the claimant's first disability, times the state's average weekly wage in effect at the date eligibility for supplementary benefits is achieved.

[¶ 12] When interpreting a statute to determine its intent, we must look at the language itself and give it its plain, ordinary, and commonly understood meaning. *State v. Lynch*, 2001 ND 173, ¶ 7, 635 N.W.2d 164. We also construe related statutes as a whole to harmonize and give meaning to each word and phrase. *Lawrence v. North Dakota Workers Comp. Bureau*, 2000 ND 60, ¶ 19, 608 N.W.2d 254.

---

1. The parties quote prior versions of N.D.C.C. § 65–05.2–01 rather than its current version. Unless otherwise provided, the statutes in effect on the date of injury govern a claimant's right to collect workers compensation benefits. *See Tangen v. North Dakota Workers Comp. Bureau*, 2000 ND 135, ¶ 12, 613 N.W.2d 490. Section 65–05.2–01 was amended in 1999 in part to reduce from ten to seven the number of years a claimant has been receiving disability or death benefits to be eligible for supplementary benefits. *See*

1999 N.D. Sess. Laws ch. 556, § 4. Although the reduction in the waiting period from ten to seven years "is effective August 1, 2006, for all claims, regardless of the date of injury," 2001 N.D. Sess. Laws ch. 582, § 2, the remainder of the statute "is effective August 1, 1999, for all claims regardless of the date of injury." 1999 N.D. Sess. Laws ch. 556, § 6. Therefore, the current version of N.D.C.C. § 65–05.2–01 governs, except that the waiting period is ten rather than seven years.

When the meaning of the statute is clear on its face, there is no room for construction. *Erdmann v. Rants,* 442 N.W.2d 441, 443 (N.D.1989).

[¶ 13] To be eligible for supplementary benefits under N.D.C.C. §§ 65–05.2–01 and 65–05.2–02(1), the claimant 1) must be "receiving" permanent total disability benefits or death benefits, 2) must have been "receiving" disability or death benefits for ten consecutive years, and 3) the claimant's weekly benefit rate must be less than 60 percent of the state's average weekly wage. The plain, ordinary, and commonly understood meaning of the word "receive" is "[t]o take or acquire." *The American Heritage Dictionary* 1032 (2d Coll. ed.1985). Although Baity had been "receiving" disability benefits for more than the required ten-year period and her benefit rate may have dropped below the 60 percent threshold, it is undisputed that Baity was not "receiving" permanent total disability benefits. The definition of "permanent total disability" under N.D.C.C. § 65–01–02(26) specifically states that an employee must be "determined incapable of rehabilitation of earnings capacity" to qualify as permanently and totally disabled. The cyclic review committee did not determine Baity was incapable of rehabilitation of earnings capacity, and therefore permanently and totally disabled, until September 11, 2002.

[¶ 14] This Court's decision in *Saari v. North Dakota Workers Comp. Bureau,* 1999 ND 144, 598 N.W.2d 174, lends analogous support for this conclusion. *Saari* involved a claim for a permanent partial impairment ("PPI") award. *See* N.D.C.C. § 65–01–02(25) (defining "permanent impairment" as "the loss of or loss of use of a member of the body existing after the date of maximum medical improvement ...."). In calculating the claimant's benefits, the Bureau applied a statute passed by the Legislature after the date of injury which reduced his benefits from what they would have been under the previous law. The claimant argued that, under *Gregory v. North Dakota Workmen's Comp. Bureau,* 369 N.W.2d 119 (N.D.1985) ("*Gregory I* "), his right to PPI benefits vested on the date of injury and could not be subsequently reduced by the new legislation. A majority of this Court held "any right to PPI benefits does not vest on the date of injury, but vests on the date the impairment is determined to be permanent," reasoning "until there has been an actual determination an impairment is permanent, no right has vested because at the time of injury the existence of the right depends on a future evaluation, an event the result of which is uncertain." *Saari,* at ¶ 13.

[¶ 15] A majority of this Court also rejected the claimant's argument that his right to PPI benefits vested on the date of maximum medical improvement rather than on the actual date he was determined eligible for a PPI award:

Gregory I, 369 N.W.2d at 122, makes clear a claimant's right to PPI benefits does not become fixed or vested until the claimant has been evaluated and determined eligible for a PPI award. The date of a claimant's maximum medical improvement is a preliminary step in the process of establishing entitlement to a PPI award. *See Tooley v. Alm,* 515 N.W.2d 137, 142 (N.D.1994). *See also Effertz [v. North Dakota Workers' Comp. Bureau],* 481 N.W.2d [218,] 222 [(N.D.1992)] (holding, in line with *Gregory I,* claimant was entitled to PPI award under 1989 rate in effect when claimant was evaluated rather than 1963 rate in effect when claimant reached maximum medical recovery). A claimant's right to a PPI award does not vest on the date of injury or on the date of maximum medi-

cal improvement because more is necessary before entitlement to a PPI award is established.

*Saari,* at ¶ 14.

[¶ 16] Like the situation in *Saari,* an evaluation must precede a determination of whether a person is permanently and totally disabled before an award of supplementary benefits can be made. Section 65–01–02(26), N.D.C.C., in defining "permanent total disability," requires that an employee be:

> determined incapable of rehabilitation of earnings capacity as determined by the:
>
> a. Nature of injury.
>
> b. Degree of physical impairment.
>
> c. Education.
>
> d. Work history.
>
> e. Vocational rehabilitation potential.

The record shows that in early 2001, a claims analyst was attempting to gather current information on whether additional vocational options could be pursued. Baity's physician agreed with the results of a March 2002 FCA indicating Baity was capable of working longer hours with more physical demands than indicated in previous FCAs. The analyst further considered possible home-based vocational options. When this information was given to the cyclical review committee, the committee asked for further information to clarify the differences in the work release conditions set forth in the most recent FCA and by the physician. After receiving a response from a physical therapist and considering Baity's reluctance to return to work, the committee determined further vocational efforts would not be productive and declared her permanently and totally disabled.

[¶ 17] Because of the necessity of an evaluation of permanent total disability status before supplementary benefits may be awarded, Baity's argument that she met all of the criteria for supplementary benefits on July 1, 2001, is pure conjecture. We have recognized the beneficial purposes of vocational rehabilitation and that "[h]aving the worker back on the job contributing in a productive and meaningful way, even at a lower wage, provides real economic, social, and psychological benefit for society and for the individual worker." *Baldock v. North Dakota Workers Comp. Bureau,* 554 N.W.2d 441, 446 (N.D.1996) (footnote omitted). The record shows WSI and its cyclic review committee were investigating rehabilitation options for Baity during the summer of 2002. In response to a question whether Baity was "any more or less disabled now than she was back in 1995," a member of the cyclic review committee testified:

> A. You know, again, I'd have to speculate, but if I take a look at that and look at the criteria she was at after we did the Functional Capacities Assessment, I don't see a great deal of improvement. But I do know part of our discussion in the Cyclic Review Committee, and I hear this almost every day, that there [are] so many opportunities out there now for home operations, and I think that we hope—we had a lot of hope that this was going to work, so physically, it doesn't look like much has changed, and so maybe the conditions haven't changed a whole lot, but, again, from the designation point of view, no doubt there was that hope. And I think Mr. Tealey and Mr. Jolliffe pointed that out in the August 29th, 2002, review, that, you know, let's give it still another shot. One can look at that in hindsight and say, look, we ended up going nowhere, maybe we should have done something earlier. It's possible, but at the same time, we didn't do it, and simply because of what we felt may work for her in going back to work or not going back to work.

Until rehabilitation options were considered and rejected, Baity could not be found permanently and totally disabled and therefore eligible for supplementary benefits.

[¶ 18] We conclude WSI's determination that Baity was entitled to supplementary benefits beginning September 11, 2002, is in accordance with the law.

### B

[¶ 19] A member of the cyclic review committee admitted that the committee did not follow its "highest priority" procedures in Baity's case and that her eligibility for supplementary benefits should have been evaluated approximately 15 months earlier.

[¶ 20] An agency's systemic disregard of the law may warrant reversing the agency decision without a showing of prejudice by the party relying on the improper conduct to ensure the government acts consistently and predictably in accordance with the law. *Greenwood v. Moore*, 545 N.W.2d 790, 793 (N.D.1996). However, "[t]o establish systemic disregard, a party must show at least some persistent pattern of improper agency conduct, that is, evidence of a single improper act is not sufficient." *Kraft v. State Bd. of Nursing*, 2001 ND 131, ¶ 48, 631 N.W.2d 572; *see also Scott v. North Dakota Workers Comp. Bureau*, 1998 ND 221, ¶ 21, 587 N.W.2d 153. Although the delay in the committee's evaluation of Baity violated its internal procedures, Baity does not argue that there is a persistent pattern of WSI delaying evaluation of claimants' eligibility for supplementary benefits. We therefore conclude that reversal of WSI's decision is not justified in this case.

### III

[¶ 21] In view of our resolution of this case, it is unnecessary to address the other issues raised. The judgment upholding WSI's order is affirmed.

[¶ 22] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.

MARING, Justice, dissenting.

[¶ 23] I respectfully dissent because the WSI's conclusions of law and order are not supported by its findings of fact and it does not sufficiently explain its rationale for not adopting recommended findings of fact and conclusions of law of the administrative law judge. *See* N.D.C.C. § 28–32–46(6), (8).

[¶ 24] It is undisputed that Baity suffered a work related injury to her low back on November 6, 1990, and began receiving temporary total disability benefits on December 4, 1990. On June 2, 1995, the claims analyst completed a review of Baity's claim and concluded: "Sedentary work with no sitting for more than 10 minutes at a time. Can stand 10–15 minutes and walk no more than 15 min. at a time. Released to work 3–4 hours per day. Not a retraining candidate." A cyclic benefit review was completed in September 1998 by a claims analyst, who recommended continued temporary total disability benefits because "cla has 3–4 hr release only. Cla not a chronic pain candidate. Cla not RHB candidate & no retraining. Cla is not going to rtn." Baity was continued on temporary total disability benefits.

[¶ 25] On September 7, 1998, WSI instituted a procedure for review of all claims where the injured worker may be eligible for receipt of supplementary benefits. Under that procedure, Baity's claim should have been reviewed ten years after her date of injury, which would have been in November 2000. This did not occur, however.

[¶ 26] On May 15, 2001, the WSI notepad reflects that an analyst would be reviewing Baity's claim for additional cyclic benefits because it did not appear Baity's condition was improving.

[¶ 27] Baity would have been first eligible for supplemental benefits July 1, 2001, which was when her weekly compensation was less than 60 percent of the state's average weekly wage. No supplemental benefit review of Baity's claim was completed, however, between 1998 and 2002.

[¶ 28] WSI expressly adopted numbers 14, 15, 16, 17, 18, 19, 20, 21 and 22 of the administrative law judge's recommended Findings of Fact. Those findings are:

14. On May 25, 2001, Baity followed up with her treating physician, Dr. Koshnick. Baity had low back pain and had been taking Daypro. Dr. Koshnick switched Baity's prescription to Naprosyn and advised Baity to follow up in five months.

15. Dr. Koshnick in a Dakota Clinic Work Injury Report dated May 25, 2001, concluded that Baity was unable to work. In a second Dakota Clinic Work Injury Report dated January 28, 2002[,] Dr. Koshnick concluded that Baity had been unable to work since October 22, 2000.

16. On October 10, 2001, Baity followed up with Dr. Koshnick. Dr. Koshnick noted Baity had an acute episode of back pain about two or three years ago and that Baity reported her fear of the possibility of this recurring again. Dr. Koshnick indicated that clinically, Baity's condition had not changed. Dr. Koshnick assessed Baity as having a history of herniated disc status post operative repair; question of failed disc syndrome; chronic low back pain. Dr. Koshnick offered physical therapy and exercises but Baity was not interested. Dr. Koshnick advised Baity to recheck every six months.

17. In a letter dated December 18, 2001, WSI asked Dr. Koshnick whether Baity was able to undergo a strengthening program followed by a Functional Capacities Assessment (FCA); and whether there was any objective medical evidence preventing Baity from participating in vocational planning. On December 27, 2001, Dr. Koshnick provided responses indicating Baity was diagnosed as having lumbago and her current treatment plan was to continue with nonsteroidals. Dr. Koshnick indicated "yes" Baity may undergo a strengthening program and an FCA; and "no" there is no medical evidence to prevent Baity from participating in vocational planning.

18. On February 5, 2002, Baity underwent an FCA at MeritCare Occupational Health. The occupational therapist, Mr. Bryce Nelson ("Nelson") determined in his report that the FCA was an invalid representation of Baity's present physical capabilities based on consistencies and inconsistencies when interfacing grip dynamometer graphing, resistance dynamometer graphing, pulse variations, weights achieved, and selectivity of pain reports and pain behaviors.

19. On March 14, 2002, Baity underwent a second FCA at Healthsouth. Isometric strength testing revealed consistency of effort on 13 out of 13 tests. Functional testing revealed that Baity was lifting in the light category of work, as demonstrated by an occasional floor to knuckle

lift of 15 pounds, knuckle to shoulder lift of 20 pounds, and shoulder to overhead lift of 20 pounds, and carrying of 20 pounds for 100 feet with pivoting. During positional tolerance testing, Baity demonstrated tolerance of static sitting, static standing, stair climbing, sustained bending, repetitive bending, overhead, forward and repetitive reaching, crouching; squatting, crawling, and kneeling on an occasional basis; and walking, pivot twisting, and push-pulling on a frequent basis. Baity would require adaptations to allow for frequent changes of position. Baity's maximum ability for sitting was 5 to 12 minutes, standing was 3 to 10 minutes, and walking was 12 minutes.

20. In a note dated March 25, 2002, Dr. Koshnick indicated he basically agreed with the results of the second FCA.

21. On April 8, 2002, Dr. Koshnick completed a Dakota Clinic Work Injury Report indicating Baity was released to return to work within the restrictions of the FCA. Additionally, Dr. Koshnick restricted Baity to no lifting/carrying greater than 20 pounds and only for an hour or two. Dr. Koshnick restricted Baity's daily work hours to four hours per day.

22. In a letter dated April 9, 2002, Dr. Koshnick indicated Baity's maximum work capacity would be 16 to 20 hours per week on an initial trial basis. Dr. Koshnick indicated these work hours should only be increased as tolerated, and should be attempted on a trial basis only.

These findings establish that as of April 9, 2002, Baity's work restrictions were nearly identical to the work restrictions noted by the claims analyst on June 2, 1995, which were—not sitting for more than 10 minutes at a time, standing 10–15 minutes, walking no more than 15 minutes at a time and released to work 3–4 hours per day. Although Baity's medical condition and work conditions clearly had not changed, WSI sought an opinion whether Baity could work an eight-hour day. The response from the occupational therapist was that Baity could only initially work three to four hours a day and gradually increase as tolerated. WSI then concluded there were no viable rehabilitation options and declared Baity permanently and totally disabled on September 11, 2002, and eligible to receive supplemental benefits beginning only that day.

[¶ 29] The findings of the WSI can lead to only one conclusion: that Baity is permanently and totally disabled now and has been since at least 1995. There is no evidence in the record and WSI made no findings to support the idea that Baity can be vocationally rehabilitated. She has the same release to work of 3–4 hours per day now that she had in 1995. Nothing ever changed with regard to her impairment, age, education, work history, or vocational skills. In fact, WSI does not dispute that Baity was unable to work from 1995 to 2002.

[¶ 30] All of the evidence establishes that had Baity been reviewed on July 1, 2001, she would have been eligible for permanent total disability benefits on that date. It also establishes that she has been eligible for permanent total disability benefits from that date to the present.

[¶ 31] In *Shiek v. North Dakota Workers' Comp. Bureau*, 2001 ND 166, ¶ 26, 634 N.W.2d 493, our Court said:

The Workers' Compensation Act is remedial legislation, and we construe it to afford relief and avoid forfeiture with the view of extending its benefits to all

who fairly can be brought within its provisions.

(Citation omitted.) We have also said "[a]lthough the claimant has the burden of proving the right to ... benefits, the Bureau must not place itself in a position fully adversary to the claimant." *Frohlich v. North Dakota Workers Comp. Bureau,* 556 N.W.2d 297, 301 (N.D.1996).

[¶ 32] In order to be eligible to receive permanent total disability benefits, a claimant must be permanently and totally disabled. The majority cites to the current definition of permanent total disability. However, our Court has said that "[u]nless otherwise provided, statutes in effect on the date of an injury govern workers compensation benefits." *Snyder v. North Dakota Workers Comp. Bureau,* 2001 ND 38, ¶ 9, 622 N.W.2d 712 (citations omitted). In 1989, the term "permanent total disability" was not defined in N.D.C.C. § 65–01–02. The term "disability" was defined in N.D.C.C. § 65–01–02(11) as follows:

"Disability" means that period of time an employee is totally or partially incapacitated from:

a. Performing employment at any suitable gainful employment or occupation for which the employee is reasonably suited by experience or training;

b. Earning in the same or any other employment the wages the employee was receiving at the time of injury.

In 1991, the legislature added the term "permanent total disability" to the definition of the term "disability." The 1991 version, then enacted under N.D.C.C. § 65–01–02(12), reads as follows:

"Disability" means loss of earnings capacity and may be permanent total, temporary total, or partial.

a. Permanent total disability is permanent in nature and total in charac-

ter, and is paid to an employee who is not capable of rehabilitation of earnings capacity, which depend upon the following factors:

(1) Nature of injury;

(2) Degree of physical impairment;

(3) Age;

(4) Education;

(5) Work History; and

(6) Vocational rehabilitation potential.

[¶ 33] The current Act authorizes permanent total disability benefits during such disability. N.D.C.C. § 65–05–09. Under N.D.C.C. § 65–05–08, "[i]f the period of disability is five consecutive calendar days' duration or longer, *benefits must be paid for the period of disability ...*" (Emphasis added.) This means the benefits are paid beginning on the date the evidence establishes the disability. *See Shiek v. North Dakota Workers Comp. Bureau,* 1998 ND 139, 582 N.W.2d 639 (an employee who becomes permanently and totally disabled on or before the employee's retirement date is entitled to permanent total disability benefits and has not voluntarily retired).

[¶ 34] Baity has been continuously receiving temporary total disability benefits during her period of disability rather than permanent total disability benefits. Temporary total disability is total in character, but temporary in nature because the claimant's medical condition is expected to improve. Once the claimant has reached maximum medical recovery, her physical and vocational limitations will determine whether she is permanently totally disabled. *Frohlich,* 556 N.W.2d at 301. "In reaching a determination of permanent total disability, consideration must be given to the type of work being done at the time of the accident, the nature and extent of the injury, and the age, experience, train-

ing, and capabilities of the employee. These factors specifically embrace the earning ability of a claimant." *Buechler v. North Dakota Workmen's Comp. Bureau,* 222 N.W.2d 858, 861 (N.D.1974) (citation omitted). "Total disability exists when a worker is unable, solely because of a job related injury, to perform or obtain any substantial amount of labor in that particular line of work, or in any other for which the worker would be fitted." *Bruns v. North Dakota Workers Comp. Bureau,* 1999 ND 116, ¶ 28, 595 N.W.2d 298 (citation omitted).

[¶ 35] A benefit recipient's status may change over time. *See* N.D.C.C. § 65–05–04. WSI can review at any time whether a recipient continues to be disabled. *Id.;* N.D.C.C. § 65–05–08(3).

[¶ 36] In the instant case, although a claims analyst questioned whether things had changed for Baity so that she could return to work, ultimately WSI concluded Baity is not only temporarily totally disabled, but is permanently totally disabled. To decide, however, that the date on which she is entitled to receive permanent total disability benefits is the date of WSI's decision and not the date the evidence establishes Baity is permanently totally disabled ignores our statutes and case law on awarding permanent total disability benefits. The evidence only supports a conclusion that Baity was entitled to be receiving permanent total disability benefits on July 1, 2001.

[¶ 37] Under N.D.C.C. § 65–05.2–01, a claimant "who is receiving permanent total disability benefits, . . . and who has been receiving disability . . . for a period of [ten] consecutive years is eligible for supplementary benefits." Therefore, because Baity was entitled to be receiving permanent total disability benefits on July 1, 2001, she is eligible for supplementary benefits as of July 1, 2001. The majority's

reading of the statute is not reasonable. It is also inconsistent with WSI's own conclusion that Baity is eligible for supplementary benefits as of September 11, 2002, which is the date of its decision Baity is permanently and totally disabled and, therefore, the date she is "receiving" permanent total disability benefits.

[¶ 38] The legislative history of ch. 65–05.2 indicates it was enacted to provide a cost of living adjustment through increased benefits for injured workers who were permanently totally disabled beginning in 1979. *See* Testimony of Representative Royden D. Rued before the House on January 29, 1979. The purpose of the law, therefore, is to provide sufficient benefits essential to an injured worker's survival. The majority's interpretation of the statute, N.D.C.C. § 65–05.2–01, is not in keeping with the legislative intent nor is it consistent with our Court's longstanding interpretation of determining when a claimant is permanently totally disabled and entitled to receive permanent total disability benefits. To interpret the statute as the majority does, penalizes the injured worker, whom the legislature intended to benefit, for a faulty process that delayed review of the claim.

[¶ 39] Therefore, I respectfully dissent and would reverse the decision of WSI and the district court and conclude, as a matter of law, the date of eligibility to receive permanent total disability benefits is dependent on the date the evidence establishes the permanent total disability of the claimant. Accordingly, I would direct WSI to enter an order declaring Baity entitled to supplementary benefits as of July 1, 2001.

[¶ 40] MARY MUEHLEN MARING, J.